CARROLL (LE ROY v.). See Case No. 8,-266.

## Case No. 2,456.

### CARROLL v. PERRY et al.

[4 McLean, 25.] [1]

Circuit Court, D. Michigan. June Term, 1845.

TAXATION — UNPATENTED LANDS — FEDERAL RE-STRICTIONS—JURISDICTION AS TO ACTS OF STATE OFFICERS—POWER OF FEDERAL COURTS.

1. Lands purchased of the United States and paid for, though not patented, may be taxed by a state.
[Cited in Pacific Coast Mining & Milling Co. v. Spargo, 16 Fed. 350; Hamilton v. Southern Nev. Gold & Silver Min. Co., 33 Fed. 566.]
[See note at end of case.]

2. Property of every description, under the jurisdiction of a state, is subject to taxation.

3. On the exercise of this power, the federal government can interpose no restriction.

4. Stock of the United States is not taxable, as to tax it would be a tax on the means of the government.

5. The judiciary of the federal government can not. it would seem, exercise a revisory jurisdiction over the state officers, in the performance of their duty. But, if their acts be illegal, there is a remedy in the courts of the Union, as well as in courts of the state.

6. The judiciary, in the investigation of tax titles, can always exercise the necessary power to procure the records of the state, or certified copies therefrom, to show the proceedings in the sale of land for taxes.

[In equity. Bill by Charles H. Carroll against the treasurer of Monroe county.]

Mr. Romeyn, for complainant.

Wing, McClelland & Backus, for defendants

OPINION OF THE COURT. This is an application for an injunction, to restrain the treasurer of the county of Monroe, in this state, from granting deeds or other conveyances of the real estate and premises described in the bill, belonging to the complainant, sold by the defendant, Perry, as treasurer of said county, for the taxes of the year 1837, on the ground—1st. That the fee simple in the lands described in the bill was, at the time of the assessment of said taxes, for the year 1837, in the United States, and not subject to taxation. 2d. That the proceedings of the respective officers making said assessment were irregular, defective, oppressive and void. 3d. That the said treasurer denied to the complainant's agent and attorney, access to the books and proceedings of said officers, showing the manner in which the assessments were made.

It is admitted, as insisted on by the complainant, that courts of equity will, in many cases, exercise a concurrent jurisdiction with courts of law; although such courts may adopt equitable principles. [City of Washington v. Pratt] 8 Wheat. [21 U. S.] 681; 2 Swanst. 580; [Armstrong v. Athens Co.] 16 Pet. [41 U. S.] 282; 5 Pet. Cond. R. 759, 752.

[1] [Reported by Hon. John McLean, Circuit Justice.]

A court of chancery has jurisdiction to set aside a conveyance which is a cloud upon the complainant's title; and may also interpose to prevent the giving of a conveyance, under the pretense of right, which would operate to embarrass the title to real estate. 5 Paige, 501; 2 Paige, 282; 2 Story. Eq. Jur. 8–17; 17 Ves. 243. And the principle is also admitted that chancery may interpose by injunction to prevent an irremediable injury to real estate. This does not mean a mischief which shall destroy its value; but one which shall materially affect its value or use, and which, when done, cannot be repaired by an action for damages. Burnet v. Cincinnati, 3 Ohio, 87; 17 Ves. 110; 6 Johns. Ch. 497; 6 Paige, 88.

But what is the ground on which this application for an injunction is founded? It is assumed, that at the time the land was assessed for taxation, the fee was in the United States, and that, consequently, it was not liable to taxation. This position cannot be admitted. It imposes a limitation on state power, which does not come within the delegated powers of the federal government. In the admission of several of the western states into the Union, a compact was entered into, that the lands sold by the United States, within such states, should not be taxed until after the expiration of five years from the time of the sale. But no such compact is applicable to the case before us. The question arises on the point, whether a state has power to tax land, after it has been purchased and paid for by its citizens, before the emanation of the patent from the general government. To say that this has been done by perhaps all the western states, in which such lands have been situated, would not be conclusive, but it would afford strong evidence of what the law is. The taxing power of a state may reach everything within a state, which can be denominated property. It may be made to embrace all equitable credits, of whatever description they may be. No state, however, can tax the stock of the United States, held by its citizens, as that would tax the means of the general government. In the Virginia military lands in Ohio, lying between the Scioto and Little Miami rivers, the state has uniformly taxed entries and surveys, before the patent was issued. And the same thing has been done of lands purchased under the acts of congress.

The act of Michigan authorizes a tax on land not patented, where it has been entered and paid for. As evidence of this, the land offices were required to be examined. and a list made, by the assessor, of lands sold. The language of the act is general, and embraces such land. In law, land purchased and paid for, is considered as real estate, and descends to the heirs, and not to the executors and administrators. The principle contended for by the complainant, would materially affect the revenue of the state of Michigan. From the large amount of land sales, the patents are some years behind the sales; and if the land

sold, could not be taxed until the title issued, it would postpone a considerable portion of the revenue of the state, while the owner of the land is in possession of it, and exercising his rights over it. There is also an insuperable objection to the revision by this court, in this form, of the irregularities of the state officers complained of. If the state had no jurisdiction, as in the case of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738, this court might interpose. But in this case the court think the right of the state to tax the land is clear, and the question is, whether in such a case the federal courts can interpose and arrest the proceedings of the state officers in imposing and collecting its revenue. To say the least, such an interposition would be very embarrassing to state action, in a matter vital to its prosperity. But, in addition to this consideration, there is no imperious necessity which calls for such interference. If the law shall be disregarded, in divesting the title of the complainant, the conveyance will be held inoperative by the state as well as the federal tribunals. The question has been well settled, that to convey a good title under a tax sale, the law must be complied with, in all its essential requisites. This, then, will give an adequate remedy to the complainant, should the irregularities stated, have occurred, or be likely to occur.

And as to the third ground taken, "that the treasurer refused to permit an inspection of the books, to ascertain how the assessments had been made," whenever it shall become necessary to investigate such procedure judicially, means will be afforded to bring before the court all the evidence material in the case. Upon the whole, the bill is dismissed at the costs of the complainant.

[NOTE. In Carroll v. Safford, 3 How. (44 U. S.) 441, Mr. Justice McLean, in delivering the opinion of the supreme court, on the question of the taxability of unpatented lands for which the purchase price had been paid, said: "When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held for it a final certificate, which could no more be canceled by the United States than a patent. * * * It is said the fee is not in the purchaser, but in the United States, until the patent shall be issued. This is so, technically, at law, but not in equity. The land in the hands of the purchaser is real estate, descends to his heirs, and does not go to his executors or administrators. In every legal and equitable aspect it is considered as belonging to the realty." And see the opinion by the same justice in Astrom v. Hammond, Case No. 596. In Kansas Pac. R. Co. v. Prescott, 16 Wall. (83 U. S.) 603, Mr. Justice Miller, in delivering the opinion, says: "While we recognize the doctrine heretofore laid down by this court that lands sold by the United States may be taxed before they have parted with the legal title by issuing a patent, it is to be understood as applicable to cases where the right to the patent is complete, and the equitable title is fully vested in the party without anything more to be paid, or any act to be done going to the foundation of his right."]