MARY W. BOYNTON, *in Eq. versus* DEODAT BRASTOW *& als.*

Equity will not permit trust property to be reconveyed to one of several trustees, before his duties as trustee are ended, for the same considerations for which it was sold by them, except for the benefit of the *cestui que trust.*

Instructions to the master.

BILL IN EQUITY.

The facts sufficiently appear in the opinion.

*A. W. Paine,* for the complainant.

*J. S. Rowe,* for the respondents.

WALTON, J. — This is a bill in equity by a sister against her two brothers, in which she claims that they, as trustees under their father's will, are unjustly withholding from her her interest in her father's estate. The plaintiff's husband is a nominal defendant, being one of the trustees under the will; but his feelings as well as his testimony, are in favor of his wife; so that the controversy is between the sister and her two brothers. The plaintiff, Mrs. Boynton, and the defendants, Billings Brastow and Deodat Brastow, jr., are the only children of Deodat Brastow, senior, deceased.

The father died in August, 1846. By his last will and testament he gave all his property, real and personal, to his two sons, and the husband of his daughter, *in trust*, for certain purposes therein expressed, *the residue, after discharging certain other trusts, to be equally divided among his three children.* The estate has been fully administered in the Probate Court, and the administration accounts closed. The plaintiff claims that there is a residuum in the hands of her two brothers, one third of which belongs to her. They deny that there is any such residuum in their hands.

During the administration the defendants sold the testator's interest in real estate, and within a short time after, the whole of it was re-deeded to Deodat Brastow, one of the defendants. These sales were for sums little more than nominal. No considerations in fact passed between the parties, the reconveyances being made in satisfaction of the sums agreed to be paid at the time of the first sales, neither more nor less. The plaintiff claims that these re-sales — the purchasing back of the testator's interest — were for the benefit of all the children, and that the property was thenceforth held in trust for their joint benefit. This the two brothers deny. They say that the property was fairly sold, and that the re-sales were not for the benefit of all the children, but for the benefit of Deodat alone; and that he thenceforth held it, not in trust for himself and others, but for himself alone.

A careful examination of the case satisfies us that the plaintiff is right, that the conveyances to Deodat were in fact intended for the benefit of the plaintiff as well as her two brothers; or else they must have intended a fraud upon her, which a court of equity will not allow them to consummate.

We are satisfied that the property was sold, not for the largest, but for the smallest sums possible. There may not have been any express agreements to that effect, — most likely there were not, — but it is impossible to believe that

the executors did not expect to be able to buy it back again for the benefit of the heirs, at the same price for which it sold. And it is equally difficult to believe that the purchasers did not expect to re-sell the same to the executors upon those terms. It does not appear that they paid, or offered to pay anything for their purchases; or that they were in any hurry for their deeds. One of the purchasers was the confidential friend of the brother who conducted the sales, and the other two purchasers were his legal advisers.

It is enough, however, for us to know that the property was re-deeded to one of the trustees for the same considerations for which it was sold, before his duties as trustee were ended. Equity will not permit a trustee thus to deal with the trust property, except for the benefit of the *cestui que trust.* Sound policy requires all the skill and efforts of a trustee to be used for the benefit of the *cestui que trust;* and to secure this end his private interest must not be allowed to come in conflict with his duty. If a trustee could be allowed to sell the trust estate, and then immediately to buy it back for his own benefit, his private interests would be in direct conflict with his duty. To enable him to buy cheap he must sell cheap. Instead of making known its good qualities, and its real value, and the true state of the title, he would be influenced to disparage the estate, by concealing, as far as he could, every thing which would enhance its value, and to avoid clearing up any clouds that might hang over the title.

But it is said in defence that this estate was hopelessly insolvent, — that there was absolutely nothing for the residuary clause in the will to operate upon, — and that if the property was sold and bought in for less than its value, the creditors and not the heirs, would be the only persons to complain. But this argument, however specious, is not sound.

The testator seems to have supposed that he would leave to his children an estate worth seven thousand dollars, after paying all his just debts. But at the time of his death an

equity suit was pending against him, growing out of an old land trade, in which judgment was afterwards recovered against the estate for over six thousand dollars. This put a new face upon things, and thenceforth the estate seems to have been managed in a manner quite different from what we may reasonably suppose it would have been, if the suit had terminated favorably to the estate.

The estate was represented as insolvent. Commissioners were appointed. The creditors in the above judgment proved their claim before them, and theirs was the only claim of any magnitude that was proved before the commissioners. Such a claim was not likely to be viewed by the heirs with favor, and henceforth the estate seems to have been managed, not for the purpose of producing the largest, but the smallest dividends possible; and this purpose was so successfully carried into effect, that on settlement of their final account in the Probate Court, there was absolutely nothing for the creditors, and a small balance due the executors. This was not difficult to accomplish. Nearly all of the testator's estate, real and personal, was mortgaged or pledged to his son Billings, (one of the executors,) for a debt of unknown magnitude. From the evidence now before us, we infer that the debt was about four thousand dollars, and that the real and personal estate mortgaged and pledged to secure it, was worth ten thousand dollars. The right, therefore, to redeem this property, as a whole, would be worth about six thousand dollars; and if the right had been sold as a whole, and the amount of Billings's debt had been accurately stated, it is not unlikely that it would have brought very nearly its value. But it was not thus disposed of. The testator's right to redeem the real estate underwent the forms of a sale. But the amount for which it was mortgaged seems not to have been made known. The mortgage was to secure not only present, but all future indebtedness. A purchaser would want to know, not only the amount of the mortgage debt, but also whether any, and if so, how much of that debt was to be satisfied out of the personal

estate pledged.   But this question was left unanswered. Again :—the mortgage covered many parcels of real estate to secure a single debt.   How could the right to redeem one of these parcels be sold without selling the right to redeem the whole?   Impossible.   Such a right of redemption is an entire thing, and cannot be divided.   A purchaser could buy no right to redeem a single parcel.   To redeem one parcel he would be obliged to redeem the whole.   Yet the executors undertook to sell, and did go through with the forms of selling, the right to redeem one parcel at a time, and under all the other disadvantages above stated.   Such a pretended sale produced of course nothing but nominal bids ; and those were by a confidential friend and the legal advisers of the executor who managed the sale.   These nominal sums were never paid, but instead, the real estate was all re-conveyed to this same executor.

The purpose was undoubtedly to defeat the judgment re- covered against the estate after the testator's death, and save the property indirectly for the heirs.   And in this they suc- ceeded completely.   The judgment for over six thousand dollars was compromised and settled for a little over three hundred dollars, and was made the basis of claims against others, on which was recovered the sum of six hundred dol- lars ; so that in the end the estate was enlarged instead of diminished by it.

Suppose this is so, say the brothers, will a court of equity decree a distribution among wrongdoers?   Can our sister rightfully call upon us to share with her what we have cheat- ed out of the creditors?

The answer is this :—Your sister does not charge you with fraud towards the creditors.   For aught that appears their claims have all been settled.   She charges you with fraud only in endeavoring to deprive her of her share of her father's estate remaining in your hands after you have satis- fied, *not defrauded,* the creditors.   She charges you with no fraud towards the creditors, and we will not permit you to

defeat her claim by alleging your own fraud. *Nemo, allegans suam turpitudinem, audiendus est.*

After the recovery of the judgment against the estate in the equity suit for over six thousand dollars, the estate was properly enough represented by the executors as insolvent. But after that judgment had been compromised, and was made the means of recovering of others a sum nearly twice as large as was paid to settle it, there was no propriety in continuing to treat the estate as insolvent. By proper and judicious management we think from five to seven thousand dollars might have been saved out of it for the benefit of the residuary legatees.

We are satisfied that the two brothers have assets in their hands which they ought to account for to their sister, or her personal representative. The real estate sold and re-deeded to Deodat must be regarded as such. The six hundred dollars collected of Crosby & Todd must be regarded as belonging to the trust estate. And all other sums received and not accounted for in the Probate Court.

But before a final decree can be made which will do complete justice between the parties, the case must go to a master, to inquire and report : —

1. What sum, if any, is due upon the mortgage to Billings Brastow. The master should charge him with all sums received, or which, by reasonable diligence, might have been received, on account of the personal securities pledged to him. He should be charged with reasonable rent for all the real estate included in his mortgage. This because he and Deodat both testify that the real estate has been held and occupied by them under the mortgage. He should also be charged with all payments which have in any other way been made upon the mortgage debt. If these sums more than satisfy the mortgage debt, the master will report the amount of such over-payments. The master will allow nothing for improvements, but will inquire and report the present value of any parcels of the real estate on which

permanent improvements have been made, and how much its present value has been increased by such improvements.

2. The master will inquire and report, how much, if anything, is equitably due the brothers from the estate for the support of Mrs. Mary Whiting, under that clause in the testator's will which provides for her support. As the widow waived the provisions of the will providing for her support, and received an allowance made by the Judge of Probate from the estate, no notice will be taken of her support. The settlement of the estate, so far as it progressed in the Probate Court, will not be disturbed.

3. The master will take and return an account between the two brothers and the trust estate; charging them with the real estate before named, at its present value as nearly as it can be ascertained, and with all other property, money, rights, or credits, which have come into their hands, on account of said estate, *not accounted for and settled in the Probate Court;* and crediting them with all just and equitable claims which they may have against said estate, in their said capacity of executors and trustees under the will.

The case will be reserved for further proceedings after the return of the master's report. The foregoing is but an outline of the decree that will be made, sending the case to a master. When the decree comes to be drawn up in form, if the Court shall discover that other and more explicit directions to the master are required to secure a report that will enable them to do complete justice in the premises, they will be inserted.

*Bill sustained, case sent to a master.*

APPLETON, C. J., DICKERSON, BARROWS and DANFORTH, JJ., concurred.