[No. 2954.  Decided November 11, 1898.]

WASHINGTON IRON WORKS COMPANY et al., Appellants, v. COUNTY OF KING et al., Respondents.

TAXATION — STATE LANDS HELD UNDER CONTRACT OF PURCHASE.

A purchaser of state lands, holding the same under an executory contract until certain conditions are complied with, the title meanwhile remaining in the state, must pay the taxes thereon, under Laws 1893, p. 335, § 6, which provides that state, county or municipal lands, held under a contract for the purchase thereof, shall be considered, for all purposes of taxation, as the property of the person so holding the same.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge.  Affirmed.

*Ballinger, Ronald & Battle,* for appellants.

*James F. McElroy, John B. Hart, Walter S. Fulton* and *Will E. Humphrey,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—Appellants purchased tide lands of the first class, situated in the city of Seattle, or within two miles thereof on either side, and in the year 1896 entered into contracts with the state, paying one-tenth of the purchase price when the contract was executed, and covenanting to pay the remainder of the purchase price in nine annual installments, beginning the first of March, 1897, with interest at the rate of six per cent. per annum. Appellants, in their respective contracts, covenant to pay the purchase price, and it is also stipulated that, in default of payment thereof, the contract may be declared forfeited and the state released from all obligations to convey after such forfeiture; that, if the covenants and agreements are performed, the purchasers shall receive patents from the state. The contracts also contain the following stipulation:

" Said party of the second part [each appellant] covenants and agrees that he will pay all taxes and assessments of every kind that may be levied or assessed on such lands and premises."

The revenue law provides:

" Property held under a contract for the purchase thereof, belonging to the state, county, or municipality, and school and other state lands, shall be considered, for all purposes of taxation, as the property of the person so holding the same." Laws 1893, p. 335, § 26.

The assessor of King county listed and assessed the tide lands of appellants for general state, county and municipal and school district purposes for the year 1897. The value placed thereon was equalized by the state board of equalization and the board of county commissioners of King county, and the tax has been duly levied against the lands. Only one installment of the purchase price upon the lands had been paid by each of the appellants at the time they were assessed. This suit is brought to enjoin the collection

of the tax upon the lands. A demurrer was interposed to the complaint, and sustained by the superior court.

The controversy presented is whether tide lands sold by the state under the contract of purchase provided by the statutes are subject to taxation as the property of the purchaser. Counsel for appellants maintain that these lands belong to the state and are exempt from taxation, under the second proviso in § 2, art. 7 of the constitution; that they are held under a contract of purchase that may be forfeited by the state for any breach of the conditions contained in the contract. Sections 2146 and 2147, Bal. Code (Laws 1897, p. 240, §§ 16, 17), provide for the sale of state lands; and it will be observed that the revenue law, *supra,* provides for their taxation. Some question is made by counsel for appellants upon the meaning of the revenue law when it declares that "property held under a contract for the purchase thereof, belonging to the state, county or municipality, and school and other lands, shall be considered for all purposes of taxation the property of the person so holding the same;" counsel contending that not the land itself, but only the improvements and the interest of the purchaser in the land, can be taxed; that whatever interest the purchaser may have in these lands should be listed as personal property, under the revenue act. But such construction of the revenue act cannot be maintained, especially in view of the covenant inserted in the contract of purchase by authority of the statutes. It is upon land that the tax is laid. The cases cited from the federal and some of the state courts, involving the right to impose taxes on land the title to which is still in the United States, are not applicable to this case. The state may not tax lands belonging to the United States. No property in this state is exempt from taxation, unless it clearly falls within the class exempted in the constitution.

*Thurston County v. Sisters of Charity,* 14 Wash. 264 (44 Pac. 252).

Tide lands held under contracts of purchase, such as appellants have, are in the possession, use, occupation and enjoyment of private owners. They are no longer a part of the public domain of the state, but have been segregated from it. In equity, appellants are the owners, possessing a real and substantial interest, which they can assign, transfer and dispose of as they choose; and the state cannot deprive them of this right. The term "property," as applied to land, comprehends every species of title, inchoate or complete. It is sufficient to embrace those rights which are executory as well as those which are executed. *Soulard v. United States,* 4 Pet. 511; *Puget Sound Agricultural Co. v. Pierce County,* 1 Wash. T. 159. The taxing power reaches everything within the state which can be denominated property. It may be made to embrace all equitable credits of whatever description they may be. *Carroll v. Perry,* 4 McLean, 25. The naked legal title is in the state, but for one purpose only,—to secure the unpaid purchase price. *Townsen v. Wilson,* 9 Pa. St. 270. The interest of the state is that of an equitable mortgagee. Said the supreme court of Georgia, in *Wells v. Mayor of City of Savannah,* 87 Ga. 397 (13 S. E. 442):

" It is to be assumed that the whole contract [referring to a contract for real estate in Savannah held by purchase from the city] between the parties will be observed, not broken, and their true relation to the property is to be determined on that assumption. Possession of real estate, attended with an indefeasible right to occupy in perpetuity and also with an indefeasible right to be clothed with the fee upon the voluntary payment of a fixed sum as purchase money, will constitute the purchaser the substantial owner of the property. . . . In all essential respects, so far as liability for taxes is concerned, these pur-

chasers are in the position of ordinary purchasers in possession under a bond for title, and these last are chargeable with accruing taxes on land so held."

And the court, referring to the classification of such property, whether real or personal, observes:

" Relatively to the question of taxation, it makes no substantial difference whether the estate or property of beneficial owners be classed as realty or personalty; whatever property of either kind belongs to them is taxable *ad valorem.*"

Substantially the same views are expressed in *Stockdale v. Treasurer,* 12 Iowa, 536; *Logan v. Commissioners,* 51 Kan. 747 (33 Pac. 603); *Edgington v. Cook,* 32 Neb. 551 (49 N. W. 369); *Prescott v. Beebe,* 17 Kan. 320; *Oswalt v. Hallowell,* 15 Kan. 154.

The case of *Hagenbuck v. Reed,* 3 Neb. 17, is much in point. The legislature of that state provided for the sale of school lands donated to the state by the general government. The purchaser at the sale of such lands being in possession of the lands, they were assessed for taxation; and, the taxes not having been paid, the county treasurer distrained the property of the plaintiff, who thereupon brought the action to enjoin the sale. The court said, referring to the legislation of the state:

" . . . the land disposed of under its provisions is treated as no longer belonging to the state, but to the purchaser at the sale. The right to possess, enjoy and dispose of it, which is essential to ownership, is no longer in the state, but for the time being, at least, in the purchaser. It is true that he may by the terms of said act, in the contingency of non-payment of the purchase money, be required to surrender the land, together with the improvements, to the state, but until then he, and not the state, is to be regarded as the real owner of the land."

The court also observed:

" We do not conceive that the idea advanced by counsel upon the argument at the bar, that in the event of a sale

of the land for non-payment of taxes, the state would lose the unpaid purchase money, is of any force whatever. It is true that the tax deed would run in the name of the state, but she would not thereby be estopped from the enforcement of her lien for the purchase price of the land, as provided in the act above referred to."

In the case at bar, which is a bill in equity to enjoin the collection of taxes properly levied upon the tide lands held by appellants, it does not lie with them to assert the state may forfeit the lands for violation of the contracts by appellants. We may well proceed upon the assumption that the covenants contained in the contracts will be in good faith observed, but, if a possible remedy for a violation of the stipulation to pay taxes existed in the executive department of the state, it would afford no reason for appellant's failure to discharge the duty to pay taxes properly assessed against them.

We can see no equity stated in the complaint, and the judgment of the superior court is affirmed.

Scott, C. J., and Dunbar, Anders and Gordon, JJ., concur.