[No. 3694.  Decided May 3, 1901.]

THE STATE OF WASHINGTON, *Appellant,* v. ROBERT FROST,
*as Treasurer of Thurston County, Respondent.*

TAXATION — SCHOOL LANDS — CANCELLATION OF SALE — RIGHTS OF
STATE NOT DIVESTED BY TAX SALE.

Under Laws 1893, p. 335, § 26, which provides that "property
held under a contract for the purchase thereof, belonging to the
state, county or municipality, and school and other state lands,.
shall be considered, for all purposes of taxation, as the property
of the person so holding the same," only the interest of the con-
tractor for the purchase of state school lands, where the con-

tract of sale has been subsequently canceled for non-payment of installments of purchase price due, can be charged with taxes; and the state's right to the purchase price, or its right to forfeit the contract for non-payment thereof, cannot be divested by a tax sale of such lands (*Washington Iron Works Co. v. King County*, 20 Wash. 150, distinguished).

Appeal from Superior Court, Thurston County.—Hon. OLIVER V. LINN, Judge. Reversed.

*Thomas M. Vance,* Assistant Attorney General, for the state.

*George H. Funk,* Prosecuting Attorney, for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—Suit to enjoin the treasurer of Thurston county from selling the northeast quarter of the southeast quarter of section 16, township 17 N., range 1, for state, county, and municipal taxes. The tract is school land, owned by the state under the grant of school lands by the United States. In April, 1891, it was sold to one Frederickson for the sum of $400, payable in ten annual installments of $40 each, with interest thereon. One payment was made, and interest on the deferred payments up to July, 1892, and no further payments thereafter were made; and, under the provisions of the contract between Frederickson and the state, on the 27th of November, 1897, it was duly canceled by the commissioner of public lands for the non-payment of installments due on the purchase price. Taxes from the year 1891 to 1897, inclusive, were levied against the land by the proper officers of Thurston county, amounting in the aggregate to the sum of $18.12. The respondent treasurer was proceeding to sell certificates of delinquency in the amount of the taxes levied against the land, when the appellant, on the relation of the attorney general, filed its complaint in the superior court, praying that the respondent be enjoined from fur-

ther attempting to collect the taxes. Respondent demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and, appellant standing upon the demurrer, judgment was entered thereon dismissing the suit.

The errors assigned here are sustaining the demurrer and entering judgment of dismissal. It is maintained by counsel for the state that the sale of land for taxes levied against it under the current revenue law conveys to a *bona fide* purchaser at a tax sale a new and independent title, clear of all incumbrances and equities, and that his title relates not to a pre-existing chain, but is complete in itself,—that is, where the tax is regularly and properly charged against the land; that the contemplated sale will thus divest the right of the state to collect the purchase price of the land disposed of under the contract with Frederickson, and that the school land involved in the contract will thus be disposed of in violation of the federal trust granting the lands to the state; and also that the tax levied against the land is a tax upon the property of the state and thus inhibited by the constitution. Counsel for respondent seems to concede the effect of the tax sale, and insists that the state must be dealt with in the same manner as any other vendor of real estate who has reserved the lien for unpaid installments of the purchase price, and if the vendee fails to pay the tax the vendor may protect itself by a payment of the same. Counsel seem to regard the case of *Washington Iron Works Co. v. King County,* 20 Wash. 150 (54 Pac. 1004), as decisive of the controversy. Some of the expressions used in the opinion in that case may be misleading when considered beyond the facts before the court. It was observed there:

"Some question is made by counsel for appellants upon the meaning of the revenue law when it declares that 'prop-

erty held under a contract for the purchase thereof, belonging to the state, county or municipality, and school and other lands, shall be considered for all purposes of taxation the property of the person so holding the same;' counsel contending that not the land itself, but only the improvements and the interest of the purchaser in the land, can be taxed; that whatever interest the purchaser may have in these lands should be listed as personal property, under the revenue act. But such construction of the revenue act cannot be maintained, especially in view of the covenant inserted in the contract of purchase by authority of the statutes. It is upon *land* that the tax is laid."

The opinion then proceeds to show the substantial interest which the contractor in possession, use, occupation, and enjoyment of the land actually possessed; that he enjoyed during the term of the contract all the fruits of complete ownership. The case was a suit by one holding tide land under contract, with all the incidents of ownership, to enjoin the collection of a tax upon tide land appraised at its full value as land, and who, in his contract of purchase with the state, had covenanted that he would pay all taxes and assessments of every kind levied upon the land. The argument there for the contractor was that only his interest in the land should be taxed, and as personal property. It was in answer to that argument that the expressions referred to were used in the opinion; that is, his covenant required the payment of the full appraisement made as land. What seems to have been in view was the rule for the extent of the assessment, and the case of *Wells v. Mayor & Aldermen of Savannah*, 87 Ga. 397 (13 S. E. 442), was mentioned with approval, and quoted from as follows:

"Relatively to the question of taxation, it makes no substantial difference whether the estate or property of beneficial owners be classed as realty or personalty; whatever

property of either kind belongs to them is taxable *ad valorem.*"

It was also mentioned that the appellant could not assert, in the face of his covenant to pay the assessment and taxes, that there was another remedy by the state,— the forfeiture of the contract; or assert any rights of the state; and no equity was shown in his complaint. It was not adjudged that the purchaser at a tax sale acquired a free and independent title to the land, and we do not now think such a purchaser does. The state may dispose of its granted lands upon such terms and in such form as it may choose, having due regard to the conditions of the trust imposed upon the grant, which relates to the limitation in price; and the legislature has enacted that each contract for the sale of such lands shall provide for the payment of all taxes and assessments against the lands. A further provision is made that such contracts may be forfeited by the executive department, if such payment is not made. Primarily these contracts imply that assessments and taxes shall be levied upon these lands. Thus the statute authorizing their sale provides for such taxation. It must not be inferred from such provision and the language of the statutes that the legislature intended to tax the lands while the ownership is in the state, as such, because that is forbidden by the constitution.

Again, the legislature, in the revenue law (Laws 1893, p. 335, § 26), declares:

"Property held under a contract for the purchase thereof, belonging to the state, county or municipality, and school and other state lands, shall be considered, for all purposes of taxation, as the property of the person so holding the same."

It would seem fair to construe this legislation as charging the interest of the contractor for public lands with the payment of all taxes and assessments levied against the

land, and that such interest only is chargeable. The procedure prescribed is as against the land, but, as we have seen, it is against the land for the purpose of fixing the amount of the assessment. The land is assessed at its fair cash value as land, but the interest in the land intended to be charged is that of the contractor. Such a construction is in harmony with the constitutional provision and all the obligations of the federal trust, and may fairly be given to the statute and the purpose intended by the legislature accomplished. It is apparent that the legislature intended that the large areas of tide, school, and other granted lands, which are sold under long time contracts, and with the presumption in each instance that the contract will be carried out in good faith, should not be reserved from the taxing power of the state; that such property, valuable and enjoyed by the contractor as owner during the existence of the contract, should bear the just burdens of government.

We therefore conclude that the title passed to the purchaser at the tax sale is that of the interest of the contractor; that the state is not divested of its right to the purchase price, or its right to forfeit the contract upon non-payment of the purchase price. But in the case before us it appears that the contract was duly canceled in the year 1897, and that the contractor has, in fact, no interest in the land. It would therefore be an idle act for the respondent to proceed with the sale and place an apparent cloud upon the title. We think, upon this consideration, the demurrer should have been overruled.

The judgment is reversed for further proceedings in accordance with this opinion.

FULLERTON, ANDERS, DUNBAR and WHITE, JJ., concur.