[No. 4656.   Decided September 21, 1904.]

CATHERINE A. FRAZIER, *Appellant,* v. J. J. WILSON *et al.,*
*Respondents.*[1]

TIDE LANDS—CONTRACT TO PURCHASE—CANCELLATION—RECORD
OF BOARD OF LAND COMMISSIONERS. It is not necessary that the
record show a formal declaration by the board of state land com-
missioners that a contract for the purchase of oyster lands is can-
celed for default in payment, where notice having been given, the
contract is stamped "canceled" after default for a year and nine
months, and thereafter, upon contest with a subsequent appli-
cant, the board awards a contract and deed to such subsequent
applicant, since the action of the board upon the contest is a
sufficient declaration of cancellation.

SAME—FRAUD IN CANCELLATION OF CONTRACT—SUBSEQUENT PUR-
CHASER AS TRUSTEE. In an action seeking to hold a purchaser
of oyster lands from the state as a trustee of a former appli-
cant therefor, upon the allegation of fraud and collusion in
securing the cancellation of the plaintiff's application, a nonsuit
is properly granted, where it appears that the plaintiff was in
default in making her deferred payments, that she received a
notice to pay or her contract would be canceled, and paying no
attention thereto, the contract was stamped "canceled," whereupon,
as claimed, she filed another application, but no files thereof could
be found in the office of the state land commissioner, and, after
a contest, the land was awarded by the board to the subsequent
applicant, there being no evidence of fraud on the part of the
purchaser, or that the officers were in any way interested in his
contract, and the face of the record showing that the land was
open for sale at the time he applied therefor.

Appeal from a judgment of the superior court for Thurs-
ton county, Linn, J., entered September 9, 1902, upon
granting a motion for a nonsuit, at the close of plaintiff's
case, at a trial before the court without a jury. Affirmed.

*J. W. Robinson,* for appellant.

*Troy & Falknor,* for respondents.

[1]Reported in 77 Pac. 1064.

PER CURIAM.—This action was brought for the purpose of having a deed to certain oyster lands, held by Wilson, one of the respondents, declared to be in trust for the benefit of appellant, Catherine A. Frazier. The complaint alleges, collusion and fraud, on the part of said Wilson and the officers and clerks in the office of Robert Bridges, former state land commissioner, to deprive this plaintiff of the land and to give it to Wilson; that the said officers had an interest in Wilson's application; and that the original contract of Mrs. Frazier had never been legally canceled, and was still in full force and effect. Each of the defendants demurred to the complaint, which demurrers were sustained. The plaintiff elected to stand upon her complaint as to the land commissioner, and in due time filed an amended complaint as to defendants Wilson and wife. The defendants Wilson answered, denying the material allegations of the complaint, and setting up various affirmative defenses which we deem it unnecessary to discuss.

The case went to trial, and the evidence disclosed that, on the 13th of February, 1896, the state of Washington, through the office of the commissioner of public lands, issued to appellant a contract for the sale of certain oyster or tide lands in Thurston county, containing about twelve acres, in consideration of the payment of the following sums: $3.95 on the day of the execution of the contract, the receipt whereof was duly acknowledged; $3.95 principal, and $.07 interest, on March 1, 1896; $3.95 principal, and $.64 interest, on March 1, 1897; $3.95 principal, and $.32 interest, on March 1, 1898. It was further provided in said contract as follows:

"And the said second party covenants and agrees to pay said principal sum and interest as above specified at the rate of eight per cent per annum in gold coin of the United States at the office of the state treasurer at the

capital of said state, and that she will pay all taxes and assessments of every kind that may be levied or assessed on said land and premises, and that if said second party shall fail to pay any of the sums above specified, either of principal, interest, taxes or assessments, when the same shall become due and for six months thereafter, she will, on demand of the board of state land commissioners or other authorized officer of the state, quietly and peaceably surrender the possession of the above described land and premises and every part thereof; and upon failure to pay as above specified, all rights of said purchaser under this contract may, at the election of said board of state land commissioners acting for the state of Washington, and without notice to said purchaser, be declared forfeited and when so declared forfeited, and thereupon, the state shall be released from all obligation to convey said land; and all payments theretofore made on this contract and any and all improvements made on said land, or any part thereof, shall thereupon be forfeited to and belong to said state of Washington."

It is admitted in appellant's brief that none of the deferred payments were made. On September 1, 1897, the land department sent a notice to Mrs. Frazier notifying her of her delinquency. No response was received by the land department, and, on November 17, 1897, the contract was marked "canceled," with a rubber stamp, but the minutes of the board of state land commissioners fail to disclose an order canceling said contract. On or about the 1st of December, 1898, Mrs. Frazier tendered to the state land commissioner the amount due under her contract, and demanded a deed; whereupon the officer in charge informed her that he could not receive her money, for the reason that her contract had been canceled; that she could make a new application, and that there was no other application on file; and gave her blanks to fill out. She took the blanks home, and claims to have returned a

couple of days thereafter, and filed them. These files appear to have disappeared completely. However, the number given would indicate the filing to have been in February, 1899. On December 31, 1898, James J. Wilson made application to purchase the tide or oyster lands covered by Mrs. Frazier's contract, together with other lands. On February 19, 1900, appellant made a reapplication to purchase, solely for the purpose of contesting Wilson's claim. The application of Wilson, covering about thirty-two acres, was referred to the board of oyster land commissioners, with a request to answer the following questions: (1) Is the land or any portion thereof a natural oyster bed? (2) If the land, or any part of it, is a natural oyster bed, is it necessary, in order to secure adequate protection to it, to retain it or any part of it in the public domain? (3) Whether the land, or any portion thereof, having been a natural oyster bed within ten years past, may reasonably be expected to again become such within ten years in the future. All these questions seem to have been answered by the commission in the affirmative. Indorsed upon the report is the following:

"Upon protest being made, and upon an investigation had, it appears to me the proper answer to these questions is, No; this applies to all three questions. Upon the matter being called to the attention of the board of oyster land commissioners, they admitted they might have made an error.　　　　ROBERT BRIDGES, Commissioner."

Subsequently the board of state land commissioners awarded the land to Wilson, and dismissed Mrs. Frazier's contest. From this decision, she appealed to the superior court, but, before the appeal was perfected, a deed was issued to Wilson, which, as appellant claims, rendered it necessary to dismiss the appeal. The testimony is not very complimentary to the administration of the land commis-

sioner's office, as it was conducted at that time, but there is no evidence to show that Wilson had any knowledge of any fraud, if fraud there was, committed in his behalf. On the contrary, the record showed on its face that the land was open to entry, and, although some evidence was introduced to the effect that certain officers in the land department had claimed to have an interest in the claim, Wilson himself was put upon the stand by the appellant, and testified that no one other than himself had any interest in the land. A motion for nonsuit was sustained at the close of plaintiff's testimony, and plaintiff appeals.

It will doubtless be conceded that, whenever the board of land commissioners orders a contract for the purchase of land canceled, it is the duty of the land commissioner to make a record of the action of the board. In this instance the only record seems to be the rubber stamp, "canceled," upon the book of contracts. The presumption of law is that the officer did his duty. The appellant had been in default for about a year and nine months, and the contract was undoubtedly forfeitable. The appellant cites, *State v. Frost,* 25 Wash. 134, 64 Pac. 902, and, *Washington Iron Works v. King County,* 20 Wash. 150, 54 Pac. 1004, in support of the theory that the contract created a vested right in the appellant which could not be taken from her except by due process of law. An examination of those cases will disclose the fact that they were cases involving the right of the state to tax lands held under a contract of purchase from the state, and in no sense of the word involved the point contended for here. In fact, we should hesitate a long time before announcing a rule that would so seriously handicap the land department of the state, in the administration of the affairs of that office, as to require an action by the state to be brought to cancel such contracts. At the time Wilson made his

application to purchase, the records of the office showed that Mrs. Frazier's contract had been canceled on November 17, 1897, over a year previous, after she had been delinquent for almost a year and nine months. Section 18, Laws 1897, page 242, provides:

"The commissioner of public lands shall notify the purchaser of the land in each instance when payment on his contract is overdue, and that he is liable to forfeiture if payment is not made within six months from the time the same became due, unless the time be extended by the commissioner on a satisfactory showing as above provided."

The appellant admits that she received some sort of notice from the land commissioner, with reference to her delinquency, on or about September 1, 1897, and we think it is reasonable to assume that the notice she received is the notice provided for by the above section. It is not necessary that the board should formally declare a contract canceled. It seems to us that it is a sufficient declaration in that respect, after a person has been in default for more than six months, and where there is a contest pending between the original and a subsequent applicant, for the board to decide in favor of the subsequent applicant. Although in this instance Mrs. Frazier was not contesting Wilson's claim by virtue of her original application, if she had had any rights under her original contract, they ought to have been set up at that time, and the board given an opportunity to repudiate the so-called cancellation, if it had, as a matter of fact, been fraudulently made.

Under the circumstances, we think the judgment should be affirmed.