SCHOFIELD v. BAKER et al.

(District Court, W. D. Washington, N. D.   March, 1914.)

No. 1.

1. PUBLIC LANDS (§ 185*)—LANDS OF STATES—TIDELANDS OF WASHINGTON—PREFERENCE RIGHT TO PURCHASE.

The preference right granted by the law of Washington to riparian owners of uplands to purchase tidelands of the state is a vested right after the exercise of the option to purchase.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 598;   Dec. Dig. § 185.*]

2. BANKS AND BANKING (§ 287*)—NATIONAL BANK—RECEIVERS—POWERS.

Under Rev. St. § 5234 (U. S. Comp. St. 1901, p. 3507), authorizing the receiver of a national bank to take possession, under the direction of the Comptroller, of the assets of the bank, and on the order of court to sell the property of the bank, a receiver of a national bank cannot sell the real or personal property of the bank without an order of court, and a sale not authorized is void.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1089–1104, 1126, 1127; Dec. Dig. § 287.*]

3. BANKS AND BANKING (§ 287*)—NATIONAL BANKS—RECEIVERSHIPS—SALE BY RECEIVER—VALIDITY.

An order of court which authorized the receiver of a national bank to sell the bank assets, consisting of bills receivable, judgments, overdrafts, stocks, warrants, securities, assessments on stockholders, and "all other personal property and chattel property and evidences of indebtedness," entered on a petition which did not comprehend real estate, limited the receiver to sell personal and chattel property, and did not authorize a sale by him of real estate consisting of tidelands purchased by the receiver, with the approval of the Comptroller of the Currency, by exercising the preference right granted by law to the bank as a riparian owner of uplands to purchase on paying the price in installments and obtaining a deed on final payment.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1089–1104, 1126, 1127; Dec. Dig. § 287.*]

4. COURTS (§ 367*)—CONTROLLING DECISIONS—DECISIONS OF STATE COURT DEFINING THE NATURE OF PROPERTY.

Where property in a state has been defined by the highest court of the state as real property, the United States District Court sitting in the state should adopt that definition in determining whether such property is real or personal.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*]

5. BANKS AND BANKING (§ 259*)—NATIONAL BANKS—RIGHT TO ACQUIRE AND HOLD REAL ESTATE.

Under Rev. St. § 5137 (U. S. Comp. St. 1901, p. 3460), authorizing national banks to purchase and hold real estate for enumerated purposes, and sections 5234 and 5236 (U. S. Comp. St. 1901, pp. 3507, 3508), and Act Cong. March 29, 1886, defining the powers of the receiver of a national bank, a national bank lawfully owning uplands, and thereby having under state laws a preference right to purchase tidelands of the state, may purchase tidelands, and receiver acquiring tidelands with the approval of the Comptroller of the Currency may not challenge the right to acquire the same, and his holding can be questioned only by the government.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 980–982; Dec. Dig. § 259.*]

6. TRUSTS (§ 102*)—PURCHASE OF PROPERTY BY RECEIVER OF NATIONAL BANK—EVIDENCE.

A receiver of a national bank transferred privately to a third person land purchased with the approval of the Comptroller of the Currency. The third person merely paid the price which the receiver had paid to the state and a nominal profit. Subsequently the title was transferred to the receiver's attorney. The receiver thereafter promoted a corporation, and the land was conveyed to it in full payment of its capital stock. The third person made admissions that he purchased for the receiver and held the title to accommodate him. The value of the land greatly exceeded the price paid by the third person and by the receiver on the title being conveyed to his attorney. *Held*, that the property was chargeable

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with a trust under the rule that a trustee may not directly nor indirectly purchase any of the trust property and acquire title as against the beneficiary.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 153; Dec. Dig. § 102.*]

7. TRUSTS (§ 365*)—ENFORCEMENT—LACHES.

An action by a receiver of a national bank against a prior receiver to charge with a trust property sold by the prior receiver for his benefits, and subsequently conveyed to a corporation promoted by him in payment of the capital stock of which he owned 95 per cent. is not barred by laches, though not brought until the expiration of many years after the sale, but brought shortly after the facts were brought home to the receiver, and it did not appear that he should have known the facts prior thereto.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 568–573; Dec. Dig. § 365.*]

8. TRUSTS (§ 356*)—ENFORCEMENT—CONDITIONS.

Where property sold by the receiver of a national bank to a third person for his benefit was subsequently conveyed to a corporation in payment of the capital stock, he owning a large majority of the stock, persons subsequently acquiring the stock could not prevent a decree charging the property with a trust in favor of the bank on payment to such receiver or to the corporation of all money paid for the purchase and all taxes and assessments with interest from date of payment.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 529–538; Dec. Dig. § 356.*]

In Equity. Suit by John W. Schofield, as receiver of the Merchants' National Bank of Seattle, against Charles H. Baker and another. Decree for plaintiff.

In June, 1895, the defendant Baker was appointed receiver of the Merchants' National Bank of Seattle, in which capacity he served until April, 1899, when he was succeeded by A. W. Frater, who served until February, 1913, at which time the plaintiff was appointed as receiver. At the time of the failure of the Merchants' National Bank, it was the riparian owner of certain lands, and as such upland owner had the preference right under the laws of Washington to purchase certain tidelands, particularly the land in issue in this case, known as block 430. The receiver with the approval of the Comptroller of the Currency purchased from the state of Washington the said tidelands, and the usual contract was executed by the state and defendant Baker providing that the payment be made in ten equal installments payable annually, which contract provided upon payment in full of the consideration named in said contract the state of Washington would issue to the Merchants' National Bank of its assignees deeds in fee simple to said tidelands. The complaint alleges that Baker, while acting as receiver, purported to convey and assign the said contract to Sol G. Simpson on the 26th day of November, 1897; and alleges in substance that defendant Baker and Sol G. Simpson entered into a scheme to defraud the estate by turning blocks 429 and 430 over to Simpson, with a secret agreement that Simpson was to hold block 430 for the use and benefit of Baker; that the assignment to Simpson by Baker was to Baker's own use and benefit, and without authority of law, and was for the purpose of secretly defrauding the bank; and that at all the times that Simpson held the title to said block it was held in trust for Baker and subject to his control and direction; and that thereafter the said property was transferred by Simpson through mean conveyances at Baker's suggestion to the Seattle Water-Front Realty Company, a corporation, promoted by defendant Baker, and of which he is the owner of practically all of the stock; that at the time said block was transferred by Simpson in 1905 it was reasonably worth $100,000 and is now

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

worth $300,000. And the bill prays that the court determine what, if any, moneys have been expended upon the property involved in this suit, and that this be repaid to the defendant Baker, and the property held as property to the trust. The defendant denies all the allegations of fraud and all secret dealing, and also denies the right and power of the receiver to make the tideland purchase, and sets up the inability of the plaintiff to do equity, and the laches of the plaintiff.

Defendant further contends that on the 6th day of October, 1897, the defendant Baker obtained an order from the Circuit Court of the United States for the sale of all doubtful bills receivable, overdrafts, stocks, bonds, securities, etc., and that an order was entered by the court authorizing the sale at private sale of such assets; that thereafter he, as receiver, sold to Sol G. Simpson tideland blocks 429 and 430 for the sum of money which he had paid to the state and $50 profit upon each block; that thereafter on or about March, 1899, he repurchased from Sol G. Simpson block 430, paying the amount of money which Simpson had advanced on account of said block together with taxes and interest, and requested Simpson to retain the title to the said property in his name for the reason that he (Baker) was involved and desired to hide the property from his creditors; that the title to the property was carried in Simpson's name until 1905, when it was transferred to Norton of New York, who held the title for defendant Baker until the organization of the defendant corporation, when it was transferred by defendant Norton to the defendant corporation. The other facts sufficiently appear in the opinion.

Bausman & Kelleher, of Seattle, Wash., for plaintiff.

B. S. Grosscup and W. C. Morrow, both of Tacoma, Wash., and Corwin S. Shank and H. C. Belt, both of Seattle, Wash., for defendants.

NETERER, District Judge (after stating the facts as above). [1] The defendants contend, first, that the preference right to purchase tidelands given to riparian owners is not a vested right nor a right which could be exercised by the receiver of a national bank. This contention, I think, is definitely disposed of by the state of Washington Supreme Court in the case of Allen v. Forrest, 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606, where the right granted by the Legislature is confirmed as against the world except the state prior to the exercise of the option, and becomes a vested right after the exercise of the option by the riparian owner as will be later shown.

It becomes important in determining the issue here whether the preference right thus given a riparian owner is personal and chattel property or real estate. In the order of court, under which it is claimed the land in issue was sold, the receiver was authorized and empowered to "compromise, compound or sell at private sale all assets of said insolvent bank consisting of bills receivable, judgments, overdrafts, stocks, warrants, securities, assessments upon the stockholders of said bank, all other personal property and chattel property and evidences of indebtedness." The order is concise, clear, and certain. If the interest of the bank's receiver in the tidelands is real estate, it would not be comprehended by the order, and the receiver could not under such an order make the sale.

[2] The powers of the Comptroller of the Currency and the receiver are defined by act of Congress (section 5234, Rev. St. [U. S. Comp. St. 1901, p. 3507]), which provides:

"Such receiver, under the direction of the Comptroller * * * of the Currency * * * upon the order of a court of record of competent jurisdiction * * * may sell all the real and personal property. * * *"

To make any sale of assets of a defunct bank, an order of a court of record of competent jurisdiction is essential. The receiver cannot sell the real or personal property of the bank without an order of the court, and a sale which is not authorized by an order of court of competent jurisdiction is void. Ellis v. Lytle, 27 Kan. 707, 41 Am. Rep. 434; Richardson v. Turner, 52 La. Ann. 1613, 28 South. 158; Tourtelot v. Booker (Tex.) 160 S. W. 293.

[3, 4] A reading of the order of sale is conclusive of the fact that the receiver was limited to a sale of personal and chattel property. No real estate is comprehended either in the petition for or order of sale. Personal and chattel property is a thing movable, which may be annexed to and is attendant on the person of the owner and carried about with him from one part of the world to another. 2 Bla. Com. 14. "Real property" has been defined as an interest which a man has in land. 32 Cyc. 662. It sometimes is difficult to determine what is personal and what real property; yet, where property has been defined as real property by the state court, such holding should be adopted by this court.

In Washington Iron Works v. King County, 20 Wash. 150, at page 153, 54 Pac. 1004, at page 1005, appellants had purchased under contract certain tidelands in the city of Seattle, paying one-tenth of the purchase price, and covenanted to pay the balance in ten equal annual payments pursuant to a similar contract as in evidence in this case. The assessor of King county assessed the land as real estate, and suit was brought to enjoin the collection of the taxes. The Supreme Court said:

"In equity, appellants are the owners, possessing a real and substantial interest, which they can assign, transfer, and dispose of as they choose; and the state cannot deprive them of this right. The term 'property,' as applied to land, comprehends every species of title, inchoate or complete."

In State ex rel. Wilson v. Grays Harbor & Puget Sound R. Co., 60 Wash. 32, at page 34, 110 Pac. 676, at page 677, the Supreme Court of Washington says:

"There is a distinction between the granting of a privilege which may or may not be exercised, and the exercise of that privilege by the person upon whom it has been conferred. In the one case, the state merely confers a right the acceptance of which is optional. In the other, the option has been exercised, and the faith and credit of the state has become involved in its fulfillment."

It was there held that the preference right of a riparian owner to tidelands is an interest in land and subject to condemnation for railroad right of way. The Supreme Court of Washington, in State ex rel. Trimble v. Superior Court, 31 Wash. 445, at page 455, 72 Pac. 89, at page 92, 66 L. R. A. 897, speaking of tidelands purchased under similar contract, says:

"The interest of the relators is, to say the least, an interest in land, and as such may be taken for a public use by condemnation, upon payment of just compensation therefor."

In State v. Frost, 25 Wash. 134, 64 Pac. 902, speaking of state school lands held under a similar contract of purchase, the court held that to be such an interest in land that may be sold for taxes."

In Hotchkin v. Bussell, 46 Wash. 7, 89 Pac. 183, the Supreme Court of Washington holds that tidelands held under contract under section 6750, Rem. & Bal. Code, descends directly to the heirs subject only to the debts of the deceased.

It appears as a conclusive fact, when the phraseology of the order is considered together with the action of the court and conduct of the receiver with relation to similar property in this trust, the holding of the Supreme Court of Washington that tideland held as was the land in issue was real estate after the exercise of the option to purchase by a riparian owner, and that the sale of land was not contemplated by the order entered.

[5] It is further contended by the defendants that the receiver acquired nothing by the contract of purchase from the state; that the receiver and Comptroller of the Currency acted without authority in the securing of the contract from the state; and that their act in so doing was ultra vires. Section 5137 (U. S. Comp. Stat. 1901, p. 3460) is cited in support of this contention. This section provides:

"A national banking association may purchase, hold, and convey real estate for the following purposes, and for no others: First. Such as shall be necessary for its immediate accommodation in the transaction of its business. Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted. Third. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings. Fourth. Such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts due to it. But no such association shall hold the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years."

The powers of the receiver of a national bank are defined by the following sections of the Revised Statutes:

"5234. Such receiver, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct."

"5236. From time to time, * * * the Comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated."

Act of March 29, 1886 (page 3514 of U. S. Comp. Stats. [U. S. Comp. St. 1901, pp. 3507, 3508]), provides:

"That whenever the receiver * * * shall find it in his opinion necessary, in order to fully protect and benefit his said trust, to the extent of any and all equities that such trust may have in any property, real or personal, by reason of any bond, mortgage, assignment, or other proper legal claim attaching thereto, and which said property is to be sold under any execution, decree of foreclosure, or proper order of any court of jurisdiction, he may certify the facts in the case, together with his opinion as to the value

of the property to be sold, and the value of the equity his said trust may have in the same, to the Comptroller of the Currency, together with a request for the right and authority to use and employ so much of the money of said trust as may be necessary to purchase such property at such sale."

An examination of these sections of the statute appears to be conclusive of the fact that there is no merit in the contention of the defendant. It must be assumed, in the absence of a contrary showing, that the ownership of the upland by the bank. was authorized. The ownership of the upland carried with it a valuable privilege which was a part of and appurtenant to the upland, which passed to the bank at the time it acquired the upland, of which privilege the receiver could avail himself by making certain payments assessed by the state, in the way of appraisals of the value of the land. These assessments or payments covered a period of ten years. Not only did the receiver have the power under these sections of the Revised Statutes to exercise this privilege, and protect the security for which the upland was held by the bank, but it was his duty to do so. Even though a doubt existed as to the right of the bank to. acquire the tideland, the receiver could not be heard to challenge such right. This holding on the part of the receiver would be good as against the world except the government. Union National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; McMichen v. Perin, 59 U. S. (18 How.) 507, 15 L. Ed. 504; National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443; Cowin v. Hurst, 124 Mich. 545, 83 N. W. 274, 83 Am. St. Rep. 344; Thompson v. St. Nicholas Nat. Bank, 146 U. S. 240, 13 Sup. Ct. 66, 36 L. Ed. 956.

[6] The tideland being lawfully obtained, and being rightfully in the possession of the receiver, it is contended on the part of the plaintiff that the attempted sale of the tideland to Simpson was without authority, and the repurchase of this land by the defendant Baker in March, 1899, as contended, reinvested, the trust with this property, even though the prior sale had been made in good faith, and was duly authorized by order of court, and it is strongly urged that it is the duty of the trustee to exercise all of his powers and faculties in the interest of and for the benefit of the trust, and that he could not be a seller and a buyer at the same time, and, on becoming reinvested with the equitable title during his receivership, the policy of the law would not permit it to be other than a trust transaction.

It has always been the policy of the law, as it is administered in courts of equity, to remove as far as possible, from persons acting in a trust relation, all temptation with a view of not only having the trust administered justly, but also to have it administered in such a way that not only will justice be done, but that the public may know that justice is being done. Hence a person acting as a trustee has not been permitted to be interested in any transaction which in any way would be incompatible with his best services for the cestui que trust.

"Equity will not permit trust property to be reconveyed to the trustee before his duties as trustee are ended for the same consideration for which it was sold. Sound policy requires all the skill and effort of the trustee to be used for the benefit of the cestui que trust." Boynton v. Brastow, 53 Me. 362.

To the same effect is Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Creveling v. Fritz, 34 N. J. Eq. 34; Tourtelot v. Booker (Tex.) 160 S. W. 293. Courts have held that where an administrator sold land, and while he was yet administrator became an owner of some of the property sold for the same consideration, this dissipates his defense of good faith. Houlihan v. Fogarty, 162 Mich. 492, 127 N. W. 793; Guerrero v. Balerino, 48 Cal. 118; Winter v. Truax, 87 Mich. 324, 49 N. W. 604, 24 Am. St. Rep. 160.

Much reliance is placed by defendant Baker on Robertson v. Chapman, 152 U. S. 673, at page 681, 14 Sup. Ct. 741, at page 744, 38 L. Ed. 592. The court says:

"He could not, directly or indirectly, become the purchaser and maintain any title thus acquired as against his principal; for, in so purchasing, his duty and his interest would come in conflict. If an agent to sell effects a sale to himself, under the cover of the name of another person, he becomes, in respect to the property a trustee for the principal, and, at the election of the latter, seasonably made, will be compelled to surrender it, or, if he has disposed of it to a bona fide purchaser, to account not only for its real value, but for any profit realized by him on such resale. And this will be done upon the demand of the principal, although it may not appear that the property, at the time the agent fraudulently acquired it, was worth more than he paid for it. The law will not, in such case, impose upon the principal the burden of proving that he was, in fact, injured, and will only inquire whether the agent has been unfaithful in the discharge of his duty. While his agency continues, he must act, in the matter of such agency, solely with reference to the interests of his principal. The law will not permit him, without the knowledge or assent of his principal, to occupy a position in which he will be tempted not to do the best he may for the principal."

In that case the agent did report the purchase. On page 683 of 152 U. S., on page 745 of 14 Sup. Ct. (38 L. Ed. 592), the court says:

"That the defendant Polk did not intend to conceal the fact of his purchase is made clear by his letter of May 1, 1886, in which he informed the plaintiff that he had 'traded O'Donohoe out of the property.'"

In the instant case the principal was never notified, and information was suppressed even from the general public.

The testimony in this case shows that the transfer of the contract to purchase blocks 429 and 430 from the defendant Baker as receiver to Mr. Simpson was a private transaction between the parties and was made in October, 1897. Baker's receivership ended in April, 1899. May 9, 1904, Baker wrote the following letter to Mr. Reed, the agent of Simpson:

"May 9, '04.

"Mr. Mark Reed, Seattle—Dear Sir: I had a talk with Mr. Simpson in S. F. about the tide land which he holds in trust for me. I asked him if he would take my note in settlement of the advances he has made, together with the interest accrued thereon. The first 2 or 3 payments I made myself. Mr. Simpson's books however will show the status of the account. There is one more payment due next March to complete the contract with the state. Mr. S. stated that you held his general power of attorney and would assign the certificate back to me or my order. I wish you would compile a statement of the account I owe to Mr. Simpson and send same to Chicago, and I will send you from there a form of assignment to execute, together with note for the account, due 1 year after date, which plan Mr. S. consented to and will doubtless advise you to that effect. I may be away several months, and I may have occasion to use the item, or to dispose

of it, and so I think it had better be put in the shape indicated. My address will be as below.

    "Yours very truly,                 Chas. H. Baker,

                                        "Auditorium Annex,

                                            "Chicago.

    "I believe there is an item to my credit also of a certain sum for right of way across the tract sold to the N. P."

Baker subsequently paid to Simpson all moneys paid by Simpson on account of block 430. The title to this block was thereupon transferred to Baker's New York attorney in 1905. Baker subsequently promoted the Seattle Water-Front Realty Company, and block 430 was conveyed to it in full payment of its capital stock, $250,000. Baker was not a party to the incorporation, nor was he at any time an officer or trustee. He has during all of the time owned 95 per cent. of the stock. The other 5 per cent. was held by friends. Baker at no time was known to the public as being in any way interested in said tidelands, nor was the plaintiff or his predecessor advised that defendant Baker claimed any interest in said lot. No one connected with the trust, so far as the evidence shows, knew anything about Baker's interest in this land until about the time of bringing this action. In March, 1899, about the time that Baker claims to have purchased from Simpson block 430 for the moneys actually expended by Simpson for said block, William Pickett on behalf of his company purchased block 431, which is less valuable than block 430, for $1,750. In December, 1899, Pickett for his concern purchased blocks 441, 442, 443, 444, and part of blocks 429 and 432 for $5,000 cash. He endeavored to purchase lot 430, and saw defendant Baker, who referred him to Simpson. He saw Simpson, who said there were others interested in the block, but finally made a price of $30,000 for block 430. These negotiations covered a period of "about two or three years" commencing in March, 1899. The value of block 430, the land in issue, at the time the defendant Baker claims to have purchased from Simpson, was from $5,000 to $15,000. Simpson told Turner some time during the year of 1898–99 that "those lands belong to Charley Baker, that he was carrying the title for him to accommodate him"; and also made a statement to Mr. Roche, his private secretary, and to Mr. Reed, his son-in-law, who was acting as his attorney in fact, that he held the title to the lands for the defendant Baker. There is no doubt in my mind from the evidence presented here that there was a condition of mind between Baker and Simpson, express or otherwise, which was that Baker should have block 430. When the relation of the parties, the value of the land, and all of the circumstances as disclosed by the evidence is analyzed and applied, together with the suppression of the ownership of defendant Baker, the conclusion is inevitable.

    [7] It is next contended that the plaintiff is guilty of laches and should not be permitted to prosecute this action. I do not think that this suggestion has any force under the evidence of this case. Lapse of time is no bar, and laches cannot be asserted until knowledge is brought home to the plaintiff, or such notorious condition or relation to the property in issue by the defendant, that the plaintiff should

have known, and such condition is not disclosed by the evidence. Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Russel v. Huntington, 162 Fed. 868, 89 C. C. A. 558; Prevost v. Gratz, 6 Wheat. 481, 5 L. Ed. 311; Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383.

[8] Finally, it is asserted that innocent purchasers for value are involved, and that the plaintiff cannot do equity, and the court must leave the parties where it found them.

The testimony shows that all of the stock was paid by transferring the tideland in issue. The parties who subsequently acquired stock stand in no better position than Baker through whose subscription and transfer of the land the stock was acquired. Equity will be fully compensated by paying to the defendant Baker or Seattle Water-Front Realty Company all moneys paid on account of the purchase of said land and all taxes and assessments, together with interest on such several amounts from the date of payment; such payment to be made within 90 days from date of entering of final decree.

Decree accordingly.