[No. 13757.   Department One.   April 20, 1917.]

CHARLES R. CONNOR, *Respondent*, v. SPOKANE COUNTY,
*Appellant*.[1]

TAXATION—STATE LANDS—UNDER EXECUTORY CONTRACT—CERTIFI-
CATES OF DELINQUENCY—REFUND. The right of a purchaser of state
lands under an executory contract of sale is not assessable as real
property, and the issuance of a certificate of delinquency therefor
is an irregularity within Rem. Code, § 9252, requiring the return of
the tax to the holder of void certificates.

Appeal from a judgment of the superior court for Spo-
kane county, Sullivan, J., entered July 13, 1916, in favor
of the plaintiff, upon overruling a demurrer to the complaint,
in an action to recover taxes paid.   Affirmed.

*John B. White* and *William C. Meyer*, for appellant.
*Geo. W. Belt*, for respondent.

CHADWICK, J.—There is no dispute of fact in this case.
At some time prior to 1910, the state of Washington con-
veyed to one J. Brown, lot 12, block 86, being a part of the
subdivision of school section 16, township 25 north, range
43 east, W. M.   The property was assessed as real prop-
erty for the years 1910 and 1911.   Taxes were not paid,
and on the 4th day of September, 1912, the county treasurer
issued a certificate of delinquency to the respondent for the
taxes accumulated up to that time.   Respondent thereafter
paid the taxes for the years 1913 and 1914.   In the latter
year, the state cancelled its contract and forfeited all the
rights of its vendee.   Whereupon respondent brought this
action to recover the full amount of taxes paid by him, with
interest at the rate of 6 per cent per annum upon each sev-
eral payment.   The whole sum, with interest, aggregated,
at the time the judgment was entered in this case, $105.64.

[1]Reported in 164 Pac. 517.

The certificate of delinquency provides in terms:

"When, from the failure of taxing officers to do or perform any act in listing or assessing the property herein described, or in issuing this certificate, the same is declared void, and is redeemed by the county or municipality issuing the same, then the rate of interest shall be six per cent per annum.

"And the said county of Spokane hereby guarantees that if for any irregularity of the taxing officers this certificate be void, then said county will repay to the holder hereof the sum of Forty-seven & 71-100 Dollars, with interest thereon at the rate of six per cent per annum from the date of this certificate until paid."

The sections of the statute to which our attention has been directed are Rem. Code, § 9252, which provides for the issuance of certificates of delinquency and for their form and content, one item being:

"A guaranty of the county or municipality to which the tax is due that if for any irregularity of the taxing officers this certificate be void, then such county or municipality will repay the holder the sum paid thereon with interest at the rate of six per cent per annum from the date of its issuance: Provided, that nothing herein contained shall prevent the running of interest during the said period of twelve months from the date of delinquency, at the rate of interest provided by law on delinquent taxes."

Also, Rem. Code, § 9139, which is hereafter quoted as a part of the revenue law of 1893, and § 9092 defining real property for the purpose of taxation.

The right of the case depends upon whether the land was taxable as real property so as to sustain a certificate of delinquency issued to a third party. This court has held that the legal title to state land held under an executory contract of sale is in the state of Washington. *State v. Frost*, 25 Wash. 134, 64 Pac. 902; *State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 72 Pac. 89, 66 L. R. A. 897; *Gasaway v. Seattle*, 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68.

That the property was not taxable as real property so as to afford a basis for the issuance of a certificate of delinquency is made clear by reference to *State v. Frost, supra,* where the case of *Washington Iron Works Co. v. King County,* 20 Wash. 150, 54 Pac. 1004, upon which appellant rests its case, is explained. It is said, at page 138:

"The state may dispose of its granted lands upon such terms and in such form as it may choose, having due regard to the conditions of the trust imposed upon the grant, which relates to the limitation in price; and the legislature has enacted that each contract for the sale of such lands shall provide for the payment of all taxes and assessments against the lands. A further provision is made that such contracts may be forfeited by the executive department, if such payment is not made. Primarily these contracts imply that assessments and taxes shall be levied upon these lands. Thus the statute authorizing their sale provides for such taxation. It must not be inferred from such provision and the language of the statutes that the legislature intended to tax the lands while the ownership is in the state, as such, because that is forbidden by the constitution.

"Again, the legislature, in the revenue law (Laws 1893, p. 335, § 26) declares:.

" 'Property held under a contract for the purchase thereof, belonging to the state, county or municipality, and school and other state lands, shall be considered, for all purposes of taxation, as the property of the person so holding the same.'

"It would seem fair to construe this legislation as charging the interest of the contractor for public lands with the payment of all taxes and assessments levied against the land, and that such interest only is chargeable. The procedure prescribed is as against the land, but, as we have seen, it is against the land for the purpose of fixing the amount of the assessment. The land is assessed at its fair cash value as land, but the interest in the land intended to be charged is that of the contractor. Such a construction is in harmony with the constitutional provision and all the obligations of the federal trust, and may fairly be given to the statute and the purpose intended by the legislature ac-

complished. It is apparent that the legislature intended that the large areas of tide, school, and other granted lands, which are sold under long time contracts, and with the presumption in each instance, that the contract will be carried out in good faith, should not be reserved from the taxing power of the state; that such property, valuable and enjoyed by the contractor as owner during the existence of the contract, should bear the just burdens of government.

"We therefore conclude that the title passed to the purchaser at the tax sale is that of the interest of the contractor; that the state is not divested of its right to the purchase price, or its right to forfeit the contract upon nonpayment of the purchase price."

It may be held that the state, as between itself and its vendee, may provide for, and affix as precedent to the final conveyance of the legal title to lands held under an executory contract of sale, a condition that the interest of the vendee in the land may be taxed, and that such taxes shall be paid before a deed issues; but it does not follow that the state can put the burden of the payment of such a tax upon a third party, nor that a certificate of delinquency would convey anything to the purchaser. A certificate would not operate as an assignment of the vendee's interest in the contract, and could in no possible way ripen into title by foreclosure or otherwise.

The theory which sustains the issuance of certificates of delinquency to strangers to the title is that the state, in the exercise of its sovereign right to tax, may pass a potential deed to property upon which taxes are due and unpaid. The penalty for neglect or failure to pay taxes assessed upon real property is that such title as rests in the sovereignty of the state will be passed to the one who is willing to assume the burden of clearing the charge. The foreclosure of a delinquency certificate is a proceeding *in rem* and is operative to convey all the title that either the owner or the state possessed at the time of sale. *Sparks v. Standard Lumber Co.*, 92 Wash. 584, 159 Pac. 812.

Public policy would forbid any scheme that would subject the state to a loss of its property for an inconsiderable part of its value. For if land sold under executory contract of sale be subject to a tax as real property, and if a certificate of delinquency may issue, we would have the anomaly of the state, either directly or through the agency of one of its municipalities, giving an apparent title through the instrumentality of a certificate of delinquency and a foreclosure proceeding, with power to defeat the title evidenced by the record by simply forfeiting its contract to sell the land.

To issue a certificate which evidences no present or prospective right to perfect title by foreclosure and sale is such an irregularity as to call for the refunding of the amounts paid.

Affirmed.

ELLIS, C. J., MAIN, and WEBSTER, JJ., concur.