[No. 14257. Department One. November 23, 1917.]

MAUD H. TAMBLIN, *Respondent*, v. MRS. J. CROWLEY *et al.*, *Appellants.*[1]

COURTS—RULE OF DECISION. A decision that has become a rule of property for over ten years should not be overruled, although the court, as now constituted, thinks it unsound.

DEDICATION—HIGHWAYS—"COUNTY ROAD"—ABANDONMENT. A dedicated street in a plat outside the limits of an incorporated city or town is a "county road" within Rem. Code, § 5673, and therefore subject to abandonment by failing to open it to public travel for the space of five years after the dedication, as provided in the act.

ADVERSE POSSESSION—ABANDONED STREET—ADVERSE HOLDING. Adverse holding by actual possession of an abandoned street for more than ten years, ripens into a title, unless subject to an easement of a private nature.

TAXATION—TAX SALES—RIGHT SUBJECT—EASEMENT. After the vacation of a street by abandonment, it becomes subject to taxation; and a tax foreclosure sale divests not only the legal title, but also a private easement therein acquired through receiving a conveyance of a lot abutting on the street.

[1]Reported in 168 Pac. 982.

SAME—TAX DEED—ACTION TO CANCEL—LIMITATION. In view of Rem. Code, § 162, limiting an action to cancel a tax deed to three years, after a tax deed has remained unchallenged for twelve years, it cannot be attacked for premature commencement of the tax foreclosure. ·

Appeal from a judgment of the superior court for Thurston county, Card, J., entered October 8, 1914, in favor of the plaintiff, in an action to quiet title, tried to the court. Affirmed.

*Frank H. Kelley* and *Ralph Woods* (*Chas. L. Westcott*, of counsel), for appellants.

*Thomas M. Vance*, for respondent.

PARKER, J.—The plaintiff, Maud H. Tamblin, commenced this action in the superior court for Thurston county, seeking a judgment quieting her title, as against the claim of the defendants, to a strip of land lying along the west boundary of "Horton's Addition to Olympia, W. T.," enjoining their trespassing thereon, and the awarding of damages for their trespass already committed thereon. Trial in the superior court resulted in judgment in plaintiff's favor as prayed for, including an award of nominal damages. From this disposition of the cause, the defendants have appealed to this court.

Appellants' claim of interest in the strip of land in controversy, as we understand the contentions here made in their behalf, is rested upon the theory that the land is a public highway dedicated as a street of Horton's addition, in which street they have a special interest because of being the owners of a lot in that addition abutting thereon; also that, in the event it be held that the street has been vacated, they thereby became the owners by reversion, freed from the public easement, of at least the east one-half of that portion of the street upon which their lot abuts; and also that they have at least an easement right of a private nature over the land in controversy.

Respondent's claim of title to the strip of land in controversy is rested upon the theory that the land never was dedi-

cated as a street; that, if it ever was dedicated as such, it has become vacated by abandonment; that she has acquired title thereto through tax foreclosure proceedings and a deed issued in pursuance thereof, and also by adverse possession.

Horton's addition was surveyed and platted into blocks, lots, streets and alleys in February, 1889, and a plat thereof duly executed and filed in the office of the auditor of Thurston county by E. S. Horton and wife, the then owners of the land embraced within the limits of the plat. While the plat is entitled "Horton's Addition to Olympia, W. T." it was, and still is, outside of the corporate limits of the city, being some distance to the east of the easterly boundary of the city, and not within the corporate limits of any city or town. Along the west side of the addition was left a strip of land, then assumed to be forty feet wide, between the west line of the west row of blocks and the west line of the addition, being the strip of land here in controversy, which is claimed by appellants to have been dedicated as a street of the addition by the making and filing of the plat. There is room for arguing, from facts appearing upon the face of the plat, that this strip was not then dedicated as a street. We leave this question undecided, however.

In May, 1889, soon after the filing of the plat, Horton and wife conveyed to appellants' predecessor in interest lot 10 in block 4 of the addition, the west line of which lot is coincident with the west line of the block and the east line of the land here in controversy. This lot fronts south upon a street of the addition furnishing access to it, the dedication and existence of which street has been unquestioned at all times since the filing of the plat. In March, 1891, Horton and wife conveyed, by quitclaim deed, to R. S. Dorr the strip of land in controversy, describing its east boundary as being the west boundary of the west tier of blocks and its west boundary as the west boundary of the addition, but not stating its width. In April, 1891, Dorr surveyed and platted this strip of land into lots, streets and alleys conforming with the

streets and alleys running east and west in Horton's addition, and filed a plat thereof in the office of the auditor of Thurston county. This plat is entitled "Dorr's sub-division of the west thirty feet of Horton's Addition to Olympia." While the strip is marked as forty feet wide upon Horton's plat, and thirty feet wide upon Dorr's plat, it is plain that Dorr actually platted lots occupying the entire space between the west boundary of Horton's addition and the west boundary of the west tier of blocks of that addition. All of these lots in Dorr's subdivision were placed upon the assessment and tax rolls of Thurston county in the year 1892 and following years, and since then have been treated by the taxing authorities of Thurston county as private taxable property, except during the time that the county was the owner thereof by virtue of a tax foreclosure.

In July, 1902, there was duly rendered in a tax foreclosure proceeding brought by Thurston county a judgment in the county's favor foreclosing the claimed lien of the county for taxes levied upon all of the lots of Dorr's subdivision for the year 1895 and prior years. In pursuance of which the county became the purchaser of all of the lots in Dorr's subdivision, and a deed was issued to it accordingly. Thereafter, on March 12, 1904, by order of the board of county commissioners, the lots were sold and conveyed by the county in the manner provided by law for the sale of real property so acquired by the county. Respondent has become the owner, through conveyance and devise, of whatever interest the county acquired by the tax foreclosure and sale. The county taxing officers have caused the lots to be taxed as other private taxable property in each year since the sale thereof by the county, and respondent and her predecessors in interest have paid the taxes so levied upon all the lots in each year as they became due since so acquiring them from the county. Since prior to March 12, 1904, respondent and her predecessors in interest have at all times been in actual, visible possession of all the lots in Dorr's subdivision, such possession

being evidenced by actual use and inclosure by a fence.   There
has been no attempt by any one to disturb the possession of
the lots so held by respondent until in March, 1914, when ap-
pellants commenced to tear down the portion of the fence in-
closing them which is along the boundary of their lot 10.
That act on the part of appellants did not, however, result in
respondent being actually dispossessed of any portion of the
lots so held by her.   The possession of respondent and her
predecessors in interest has never been challenged by appel-
lants or any of their predecessors in interest in any action or
court proceeding until appellants served their cross-complaint
in this action on March 30, 1914, which, it will be noticed,
was more than ten years after respondent's predecessors in
interest acquired conveyance thereof from the county and
entered into actual, visible, physical possession of the entire
strip of land embraced in the plat of Dorr's subdivision.
There is but little conflict in the evidence touching the facts
so far summarized.   There is, however, some conflict in the
evidence touching the question of the strip of land being
open for use or used by the public as a highway during the
five-year period following the filing of the plat of Horton's
addition in 1889.   The learned trial judge did not make any
formal findings on this question, apparently because of the
case being one in equity he regarded the making of findings
unnecessary.   It is apparent, however, from his observations
made in rendering his decision, a memorandum of which we
find in the record before us, that he was of the opinion that
the street, assuming it was dedicated as such, was not opened
to public travel or used by the public as a highway during
any portion of the five years following the platting of Hor-
ton's addition, nor at any time thereafter.   A painstaking
review of the evidence convinces us that the trial court was
correct in so deciding this question of fact.   We deem it un-
necessary to analyze the evidence here.

Assuming that the strip of land in question was dedicated
by the filing of the plat of Horton's addition, we inquire, Was

it vacated by abandonment; that is, by remaining unopened to travel and unused by the public as a highway for five years following the filing of the Horton plat? It was the law of this state prior to 1909 that:

"Any county road, or part thereof, which has heretofore been, or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority granted for opening the same, shall be, and the same is hereby vacated, and the authority for building the same barred by lapse of time." Laws of 1890, p. 603, § 32; Ballinger's Code, § 3803; Laws of 1909, p. 188; Rem. Code, § 5673.

We have seen that this strip of land, claimed to be dedicated as a street, never was, within the corporate limits of any city or town. We have held that such a dedicated street is a "county road" within the meaning of the act of 1890 above quoted, and as such subject to vacation by abandonment, that is, by failing to be opened to travel or used by the public for travel. *Murphy v. King County*, 45 Wash. 587, 88 Pac. 1115; *Cheney v. King County*, 72 Wash. 490, 130 Pac. 893; *Smith v. King County*, 80 Wash. 273, 141 Pac. 695. The soundness of these decisions so interpreting the laws of 1890 is questioned and some effort made to have us reexamine the question of whether that law had any application to dedicated streets in plats outside the limits of incorporated cities and towns, or applies only to county roads established by the county authorities. In view of the fact that this interpretation of the law of 1890 has, in effect, become and remained a rule of property for over ten years, we would not now feel privileged to disturb it, even though the court as now constituted might be inclined to think it unsound as an original proposition. We are of the opinion that whatever right the public may have had in this strip of land as a public highway by virtue of the platting of Horton's addition was lost by abandonment under the act of 1890, above quoted, upon the expiration of five years following the filing of that plat.

Counsel for appellant argues that, if there was a vacation of the street by abandonment under the laws of 1890 in so far as the public right is concerned, as we hold there was, their predecessors in interest in lot 10 thereby became the owners by reversion, freed from the public easement, of at least the east one-half of that portion of the street bordering upon their lot 10. We may concede, for argument's sake, that this was the result of the vacation of the street, so far as the reversion of the land at the time of the vacation of the street is concerned. Manifestly the title so acquired was of such a nature that it could be lost by adverse possession or tax foreclosure. We have seen that, from the time respondent's predecessors in interest acquired title from the county and entered into actual physical possession of the whole of the strip, which possession was continued and exclusive in respondent and her predecessors in interest until the filing of appellant's cross-complaint in this action, more than ten years have elapsed. It is indeed difficult to conceive of a clearer case of acquiring title by adverse possession. We are of the opinion that respondent acquired perfect title to all the lots in Dorr's subdivision by adverse possession, unless we are to hold that such title failed because of appellant's easement right of a private nature acquired through the conveyance of lot 10 by the original dedicators of Horton's addition with reference to the plat.

Counsel for appellants argue that they are, in any event, the owners of an easement of a private nature over the lots in Dorr's subdivision, though the public may have lost all right therein as a highway, because of the fact that the land was platted as a street in Horton's addition, with reference to the plat of which their predecessors in interest acquired title to lot 10 by conveyance from the original dedicators thereof. Appellants' counsel invoke the law as announced by us in *Van Buren v. Trumbull*, 92 Wash. 690, 159 Pac. 891, L. R. A. 1917A 1120. We may concede that, notwithstanding the public lost its right in the street by abandonment, appellants

and their predecessors in interest did not thereby lose the easement right of a private nature which they acquired in the street by receiving conveyance of lot 10 from the original dedicators of Horton's addition with reference to the plat. We may also concede, for argument's sake, that the adverse possession of respondent and her predecessors in interest, though sufficient to divest appellants and their predecessors in interest of title to the fee, was not sufficient to divest them of the private easement right acquired with the conveyance of lot 10 from the original dedicators. We are quite unable to see, however, how appellants can escape the force and effect of the tax foreclosure and deed executed in pursuance thereof to the county. This foreclosure and sale occurred long after the vacation of the street by abandonment, and was rested upon taxes lawfully assessed and levied, at least in part, after the vacation by abandonment had become complete by lapse of time. It is plain that this was a foreclosure of a tax lien upon land subject to taxation, and for taxes lawfully assessed and levied and delinquent at the time of the foreclosure. Now, whatever easement right appellants had in this strip of land after its vacation as a public street, such right was of a private nature independent of the right of the public. In view of the fact that the taxation and enforcement of the payment of taxes upon real property under our system of taxation is *in rem* and results in the creation of a new and paramount title, it seems to plainly follow that appellants' claimed private right of easement was as completely divested by the tax foreclosure proceeding as any other interest of a private nature which they might have in the land. In *Hanson v. Carr*, 66 Wash. 81, 118 Pac. 927, it was expressly held that a private easement right in land was divested by a tax foreclosure. We are unable to see why it is not as necessary to pay taxes upon land in order to save private easement right therein as it is necessary to pay taxes upon land to save any other private right therein, when the land is not exempt from taxation. This land was not exempt from tax-

ation after the street was vacated. *Gustavson v. Dwyer*, 78 Wash. 336, 139 Pac. 194; *Wilson v. Korte*, 91 Wash. 30, 157 Pac. 47; *Connor v. Spokane County*, 96 Wash. 8, 164 Pac. 517.

Contention is made in appellants' behalf that the tax foreclosure deed to the county, under which respondent claims title, is void. Some irregularities in the foreclosure proceedings are suggested; the most serious being the alleged premature commencement of the action to foreclose the tax lien of 1895 and prior years. We think, however, that this is not such a defect as is available to appellants at this late day. This tax deed has remained unchallenged from the time of its issuance by the county to itself in the year 1902 until the filing of appellants' cross-complaint to this action in the year 1914, a period of approximately twelve years. Clearly the right to challenge the deed is barred by the three years' statute of limitations requiring that:

"Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed." Rem. Code, § 162.

See, also, *Sparks v. Standard Lumber Co.*, 92 Wash. 584, 159 Pac. 812; *Keller v. Davis*, 93 Wash. 336, 160 Pac. 946. This is not a case where appellants or their predecessors in interest were in possession of the land, as in *Buty v. Goldfinch*, 74 Wash. 532, 133 Pac. 1057, Ann. Cas. 1915A 604, 46 L. R. A. (N. S.) 1065. Nor is it a case where appellants or their predecessors in interest have been under disability.

Some contention is made in appellants' behalf that they are, at least, entitled to be adjudged the owners, or to have a private easement over, the east ten feet of the strip of land in controversy. This contention is rested upon the assumption that the strip of land is, in fact, forty feet wide, while the lots in Dorr's subdivision, which respondent and her

predecessors in interest acquired through the tax foreclosure, are only thirty feet wide and occupy only the west thirty feet of the strip in controversy. We think this contention finds its answer in the fact that, regardless of the actual width of this strip held by respondent and for which the tax deed was issued, it occupies the whole of the land lying between the west boundary of lot 10; that is, the west boundary of the west tier of blocks and the west boundary of the Horton addition. We think this is made plain by the plat of Dorr's subdivision.

The judgment is affirmed.

ELLIS, C. J., FULLERTON, MAIN, and WEBSTER, JJ., concur.