[No. 31488.   Department One.   May 24, 1951.]

H. B. SALLEE, *Appellant*, v. BUGGE CANNING COMPANY *et al.,*
*Respondents,* JOHN F. GRUBB, *et al., Appellants.*[1]

[1]Reported in 232 P. (2d) 81.

738

*A. Clemens Grady* and *Metzger, Blair, Gardner & Boldt,* for appellants.

*Wilson & Chamberlin,* for respondents.

HILL, J.—The interpretation and effect of the Laws of 1897, chapter 71, § 26, p. 149 (since repealed), and Laws of 1907, chapter 173 (Rem. Rev. Stat., § 162; since amended), are before the court on this appeal.

In 1906, the state of Washington entered into an executory real-estate contract (being No. 3022) with John D. Dow and George Simpson, whereby it agreed to sell and they agreed to buy tidelands in Jefferson county having a frontage of 217.85 chains. By various assignments, the respondent (and by "respondent" we refer to A. A. Bugge, as trustee of the Bugge Canning Company) became the owner of that contract and completed the payments thereunder June 19, 1942, and was then advised that, before the state would issue a deed, he would have to obtain a certificate from Jefferson county indicating that all taxes had been paid. After six years' delay, he procured a certificate from the treasurer of Jefferson county to the effect that all taxes assessed against state contract No. 3022 had been paid. However, his right to the issuance of a deed by the state was then challenged by the appellants, by reason of circumstances now to be related.

At the time the contract was executed and at all times thereafter until 1925, the 1897 enactment above referred to was in effect. It read as follows:

"Property held under contract for the purchase thereof, belonging to the state, county or municipality, and school and other state lands, shall be considered, for all purposes of taxation, as the property of the person so holding the same. And no deed shall ever be executed until all taxes and municipal charges are fully paid thereon." Bal. Code, § 1682; Rem. & Bal., § 9139; Rem. Comp. Stat., § 11148.

Acting under this statute, Jefferson county assessed and levied taxes on all tidelands covered by the contract. The taxes were paid by the contract purchasers from 1906 to 1910, but from 1911 to 1917 no taxes were paid. In 1918 Jefferson county brought a tax foreclosure action based on certificates of delinquency which it had issued to itself, and this action culminated in a treasurer's deed to Jefferson county covering all the tidelands.

In 1925 the statute above quoted was repealed and, by the Laws of 1925, Ex. Ses., chapter 130, § 33, p. 244 (since amended; see Rem. Supp. 1947, § 11133), it was provided that a contract for the purchase of state property should, for the purposes of taxation, be considered the personal property of the person holding the same.

From 1926 to 1948, Jefferson county levied a personal property tax against the contract each year, and those taxes were paid by the respondent.

Jefferson county sold and conveyed portions of these tidelands to appellant H. B. Sallee in 1944 and to appellants John F. Grubb and Dorothy Grubb, his wife, in 1948. As we understand the situation, although no pleadings on behalf of Jefferson county appear in the record, it claims title to those portions of the tidelands not sold to Sallee and the Grubbs.

Sallee, having paid the real property taxes levied and assessed against the tidelands conveyed to him from 1944 to 1948, inclusive, commenced the present action to quiet title against the respondent and secure a deed from the state. The state answered, admitting that all payments had

been made on the contract and expressing willingness to issue a deed as directed by the court. The respondent cross-complained, made both Jefferson county and the Grubbs additional parties defendant, and asked that title be quieted in him as to all the tidelands covered in the contract and that the treasurer's deed to Jefferson county and the county's deeds to Sallee and the Grubbs be set aside. The trial court granted the prayer of the cross-complaint and set aside the treasurer's deed to Jefferson county and the deeds by that county to Sallee and the Grubbs.

The first issue that presents itself on this appeal is what, if anything, Jefferson county acquired by the tax foreclosure and the treasurer's deed in 1918. We have held, and now adhere to those holdings, that, although the statute we have quoted gave a county the right to tax property held under a contract (*Washington Iron-Works Co. v. King County*, 20 Wash. 150, 54 Pac. 1004), it did not give nor was it intended to give the county the right to issue certificates of delinquency for unpaid real property taxes thereon or to foreclose the same. *Connor v. Spokane County*, 96 Wash. 8, 164 Pac. 517; *Knapp v. Douglas County*, 100 Wash. 125, 170 Pac. 559.

The county was doubly protected, first by the statutory requirement that no deed should be executed by the state until all taxes had been fully paid, and second by a provision in the contract (as required by Bal. Code, § 2147; presently Rem. Rev. Stat., § 7874) that the purchaser would pay all taxes and assessments of every kind levied or assessed against the property, and giving the state the right of forefeiture if such taxes and assessments were not paid within six months after they became due. *Knapp v. Douglas County, supra.*

It is our view that the 1918 foreclosure proceeding, as it related to the tidelands here in question, was not authorized by the Laws of 1897, chapter 71, § 26, and that the treasurer's deed predicated thereon conveyed nothing to Jefferson county. *Connor v. Spokane County, supra*; *Knapp v. Douglas County, supra.* Both of those cases con-

strued the statute now under consideration. In the *Connor* case we said:

"It may be held that the state, as between itself and its vendee, may provide for, and affix as precedent to the final conveyance of the legal title to lands held under an executory contract of sale, a condition that the interest of the vendee in the land may be taxed, and that such taxes shall be paid before a deed issues; but it does not follow that the state can put the burden of the payment of such a tax upon a third party, nor that a certificate of delinquency would convey anything to the purchaser. A certificate would not operate as an assignment of the vendee's interest in the contract, and could in no possible way ripen into title by foreclosure or otherwise.

"Public policy would forbid any scheme that would subject the state to a loss of its property for an inconsiderable part of its value. For if land sold under executory contract of sale be subject to a tax as real property, and if a certificate of delinquency may issue, we would have the anomaly of the state, either directly or through the agency of one of its municipalities, giving an apparent title through the instrumentality of a certificate of delinquency and a foreclosure proceeding, with power to defeat the title evidenced by the record by simply forfeiting its contract to sell the land."

And in the *Knapp* case it was said:

"We note that not only does § 6676 of Rem. Code [Bal. Code, § 2147; Rem. Rev. Stat., § 7874], relating to the sale of state lands, require the purchaser to pay all taxes levied thereon after entering into his contract of purchase, and that his rights may be forfeited upon this failure to pay such taxes, but that Rem. Code, § 9139 [Laws of 1897, chapter 71, § 26], providing for the taxing of such lands after entering into a contract for the sale thereof, also provides that 'no deed shall ever be executed until all taxes and municipal charges are fully paid thereon.' This required retaining of the title in the state until the purchaser pays all taxes, and the nature of our statutory tax foreclosure which creates a new and paramount title, we think renders it plain that the latter is not the lawful method for the enforcement of the collection of taxes levied upon state lands while under contract of sale."

For the reasons set out in the foregoing quotations, Jefferson county obtained nothing by the treasurer's deed,

and its grantees, appellants Sallee and Grubb, likewise obtained nothing.

Whether a tax levied against the entire value of the tidelands could be collected by selling only the interest of the contract purchaser, poses a problem of some difficulty, but one which is not incapable of solution. See *Ken Realty Co. v. State*, 247 Ala. 610, 25 So. (2d) 675, 166 A. L. R. 588. That problem, however, is not before us. Jefferson county made no attempt to sell only the interest of the purchaser, nor was there available any statutory procedure by which it could have accomplished that result.

Appellants place their principal reliance on Rem. Rev. Stat., § 162 [P.P.C. § 73-13] (now amended; see Rem. Supp. 1949, § 162), which read:

"Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed: Provided, that this section shall not apply to actions not otherwise barred on deeds heretofore issued if the same be commenced within one year after the passage of this act";

and on those cases holding that:

". . . Whatever the rule may be in other jurisdictions, it is firmly established in this state that a *void tax deed* may constitute a sufficient basis for the running of the statute of·limitations." (Italics ours.)

The latter quotation is from *Lara v. Sandell*, 52 Wash. 53, 100 Pac. 166, and what was actually held in that case, and properly so, is that a void tax deed will meet the requirement of color of title where that is one of the requisites to obtain a title by adverse possession under a statute such as Rem. Rev. Stat., § 786 [P.P.C. § 24-41]. We have repeated the above statement again and again, without analysis, in cases applying Rem. Rev. Stat., § 162, beginning with *Huber v. Brown*, 57 Wash. 654, 107 Pac. 850, up to and including *Turpen v. Johnson*, 26 Wn. (2d) 716, 175 P. (2d) 495.

There is other language in our decisions which also strongly supports the position of the appellants. Thus, in *White v. Gehrman,* 1 Wn. (2d) 504, 96 P. (2d) 453, we cite some seven cases and say that in them the court gave

" . . . full force and effect to the limitation contained in § 162 by holding that a tax deed issued more than three years before the beginning of an action attacking it becomes invulnerable even though the foreclosure proceedings contained *jurisdictional defects.*" (Italics ours.)

In that case we also quoted a sweeping statement from *Savage v. Ash,* 86 Wash. 43, 149 Pac. 325, in which, speaking of § 162, we said:

" ' . . . The purpose of statutes like the present is to make such titles [tax titles] desirable as investments by making them more secure, and we think the manifest purpose of the present statute was to fix a time beyond which a tax foreclosure proceeding cannot be questioned *for any cause whatsoever.*' " (Italics ours.)

We have, however, retreated or, in modern parlance, made a strategic withdrawal, from the position that § 162 prevents the questioning of a tax foreclosure proceeding "for any cause whatsoever," and have permitted a tax deed to be set aside when in fact the taxes for which the land was purportedly sold had been seasonably paid. *Port of Port Angeles v. Davis,* 21 Wn. (2d) 660, 152 P. (2d) 614. The opinion in *Turpen v. Johnson,* 26 Wn. (2d) 716, 175 P. (2d) 495, also carries an implication of a further strategic withdrawal if the real property is not susceptible of identification by the description used in the foreclosure proceeding. In that case we held that § 162 barred the action to quiet title against a tax deed; but we went to some length (4½ pages) to demonstrate that the real property in question was described with reasonable certainty in the tax foreclosure proceeding.

The legal signification of the terms "void" and "jurisdictional" varies with the circumstances under which they are used, sometimes presenting a question of no little nicety, and failure to keep that in mind often produces confusion and leads to the statement of inaccurate legal propositions.

Our precise meaning when we have said that § 162 bars an attack on a *void* tax foreclosure or that it bars such an attack even for *jurisdictional defects* must be interpreted in connection with the nature of the questions presented in the particular case in which the language was used. *Port of Port Angeles v. Davis, supra.*

We have examined the thirty-three cases in which Rem. Rev. Stat., § 162, has been cited, and it seems to us that, in applying § 162, we have assumed, as a basis for its scope, the existence of certain fundamental prerequisites with reference to the tax and the tax foreclosure proceeding on which any challenged tax deed rests, such as that the real property involved was within the taxing district, that it was subject to taxation, that it was actually assessed and a valid tax levied, that there was a tax lien against the property subject to foreclosure, that the taxes for which the lien was foreclosed were actually unpaid and delinquent, and that the real property on which the lien was foreclosed was susceptible of identification from the description used in the foreclosure proceeding. The foregoing is not intended to be all-inclusive or definitive; it is merely a statement of some, but not necessarily all, of those essentials to the validity of a tax and a tax foreclosure that we ordinarily assume to exist without discussion. Those essentials are for the most part so self-evident that any argument that § 162, or any statute of limitation, bars a consideration of their absence in an attack on a tax deed dependent thereon is an absurdity, a denial of constitutional restrictions on the taxing power, or a denial of due process of law.

We are in full sympathy with the purpose of § 162 as explained in *Savage v. Ash, supra,* but there are some objections to tax titles that cannot be obviated by a statute of limitations. The South Dakota supreme court made an excellent statement as to the character of those objections in *Randall v. Perkins County,* 72 S. D. 497, 36 N. W. (2d) 845, which we quote:

"No defects in tax proceeding are excepted from the operation of the three-year statute of limitation other than those which deprive owners of their property without due

process of law. Irregularities and formalities are not excepted from the operation of the statute. If it was within the power of the legislature to dispense with the requirement which the taxing officials have omitted, such a defect in the proceedings is not jurisdictional and does not deprive the property owner of his property without due process of law. 'The question of due process is to be determined on "the underlying principle that failure to do what might have been dispensed with may be cured by operation of a special limitation." ' "

Our cases in which the bar of § 162 has been upheld despite so-called jurisdictional defects, with one possible exception hereinafter to be discussed, have had to do with failures to give personal notification to property owners, mistakes and defects in the published summons or the affidavit therefor, premature commencement of the foreclosure, procedural irregularities, etc. When the fundamental requisites to which we have referred are absent, we are confronted not with jurisdictional *defects* but with a complete *lack* of jurisdiction.

The possible exception to which we have referred is *Baylis v. Kerrick*, 64 Wash. 410, 116 Pac. 1082, in which the appellant contended that the foreclosure upon which the tax sale and deed were predicated was void as to the land described in the deed "in that its description was not included in the summons, the claim for judgment, or the judgment itself." We have examined the record in that case, and find that the appellant was correct with reference to the summons and the judgment. The claim for judgment referred to the certificate of delinquency which was issued to the county and which was made a part of the claim for judgment. In that certificate of delinquency and in the treasurer's deed, the property was correctly described as the SW¼ of the SW¼, Section 21, Township 29 North, Range 3 East; however, the description in the published summons contained errors in both township and range, being the SW¼ of the SW¼, Section 21, Township 33 North, Range 2 East. The erroneous description was carried over from the summons into the judgment, the order

of sale, the notice of sale, and the treasurer's return of sale. There was no description in the summons by which the property could be identified "with reasonable accuracy" or at all.

We are not called upon at this time to determine whether that case should be overruled, and we refer to it merely to make clear that it is the only one of our cases which we would have difficulty in reconciling with our present statements relative to objections to tax titles that cannot be barred by the statute of limitations.

██ Much of what has heretofore been said is concededly dictum so far as the determination of the present case is concerned. But we feel that, in the face of some of the general statements heretofore made, some detailed explanation is necessary to support our holding that Rem. Rev. Stat., § 162, is not a bar to the prosecution of the present action.

The tidelands involved in this litigation belonged to the state of Washington and were not subject to taxation. State constitution, Art. VII, § 2, effective from 1889 to 1930; the same exemption now appears in our state constitution, Art. VII, § 1, as a result of the fourteenth amendment. Any tax on those tidelands must be by virtue of the authority therefor granted by the Laws of 1897, chapter 71, § 26, heretofore construed in this opinion. It was intended by that enactment that the large areas of tide, school, and other granted lands sold under long term contracts by the state, possession of which was enjoyed by the purchaser as owner during the existence of the contract, should bear their share of the cost of government. The means to insure payment of the taxes levied therefor was made a part of the statute and of the contracts under which the lands were purchased. Jefferson county had no right to issue certificates of delinquency covering these tidelands, and its attempt to foreclose them in the absence of a tax lien subject to foreclosure, was a complete nullity. *Connor v. Spokane County, supra*; *Knapp v. Douglas County, supra.* In the absence of statutory authority, there can be no tax lien nor any foreclosure

of it. *State v. Snohomish County,* 71 Wash. 320, 128 Pac. 667.

We are not by our present holding opening any new avenues for attack on tax titles. We are satisfied that all of our cases upholding the bar of Rem. Rev. Stat., § 162 (with the one possible exception heretofore discussed), are entirely consistent with our holding and our dicta in the present case. On some occasions we have meant "voidable" when we said "void," or intended a connotation of that word other than complete nullity or void *ab initio,* and when we have said "jurisdictional defects" we have not meant to imply a complete lack of jurisdiction. Appellants' reliance on some of our general statements has compelled some limitation or restriction on the meaning of the language we have used heretofore, but without alteration in the matters actually decided.

██ Appellants also urge laches as a bar to respondent's right to recover. Mere lapse of time does not constitute laches; there must be some change adversely affecting the rights of the person urging that bar to the proceeding. *McKnight v. Basilides,* 19 Wn. (2d) 391, 400, 143 P. (2d) 307.

Here the respondent had no reason to believe that Jefferson county would attempt to foreclose a nonexistent lien on the property that the respondent was purchasing; he knew that he would have to pay all taxes levied against the property before he could secure his deed, but had no reason to believe that there was any outstanding tax deed or any persons claiming rights thereunder. He was further lulled into a sense of security by the fact that Jefferson county had, each year beginning with 1926, levied a tax upon the contract and accepted his payment of that tax.

██ But if there was any undue delay or lack of diligence on the part of the respondent, wherein do the appellants have any basis for complaint? As indicated, Jefferson county had assessed and collected taxes on the contract in question from 1926 to 1948, which is inconsistent with any claim of interest in the tidelands, and it is certainly in no position to urge laches. There is no showing that the other

appellants, Sallee and the Grubbs, have been injured by the respondent's delay. There is no contention that they have made any improvements on the property they purchased, or that they cannot recover from Jefferson county the money they have paid for the deeds on which they were relying.

The respondent is not guilty of any laches which would bar his right to have the tax deed to Jefferson county set aside and his title quieted against Jefferson county and all persons claiming thereunder.

The judgment is affirmed.

SCHWELLENBACH, C. J., BEALS, DONWORTH, and FINLEY, JJ., concur.