[No. 1566-2.    Division Two.    May 3, 1976.]

KENDRICK FITZGERALD, ET AL, *Appellants*, v. NEVES, INC.,
ET AL, *Respondents*.

*James I. Maddock* and *Schultheis, Maddock & Bell,* for
appellants.

*John C. Merkel, Prosecuting Attorney, Ronald A. Franz,
Deputy, Martin Godsil,* and *Casey, Pruzan, Kovarik &
Shulkin,* for respondents.

PETRIE, C.J.—Plaintiffs, Fitzgerald and Deschamps, ap-
peal from a judgment (1) quieting title to certain real
property in defendant Neves, Inc., and (2) dismissing
plaintiffs' complaint which sought (a) to set aside a treas-
urer's deed conveying the premises to defendant Neves,
Inc., following a tax foreclosure sale and to quiet title in
themselves, or, alternatively (b) to award damages caused
either by defendant Kitsap County's negligent failure to

conform its treasurer's and assessor's records with plaintiffs' record title to said premises prior to the tax foreclosure sale or by the county's unconstitutional taking of property without compensation. We affirm the judgment.

In October 1967 the Kitsap County Treasurer conducted a tax foreclosure sale on a 1½-acre parcel of "wild and unimproved" land upon which unpaid taxes had accumulated in the amount of $67.29, no portion of which had been paid since 1962. Although plaintiff Fitzgerald held title to the strip of land by deed recorded with the Kitsap County Auditor since 1961, the Treasurer never sent him tax statements or notices of delinquency. Further, Fitzgerald was not named as a party to, and was never served with summons in, the foreclosure action. Neves bid and paid $255 for the land, which was then worth approximately $3,000. A treasurer's deed was issued, and Neves has been paying taxes annually thereafter.

In mid-1969 Neves listed the property for sale with a realtor. After a prospective sale developed, the realtor became aware of a deed, dated and recorded in 1961, which conveyed title to an irregularly shaped 28 acres of land, including the disputed 1½ acres, from one Claudio Galendo (the party to whom the tax statements and foreclosure notices had been sent from 1962 to 1967) to plaintiff Fitzgerald. Through the realtor, Neves sought a quitclaim deed from Fitzgerald and his brother, plaintiff Deschamps, to whom Fitzgerald had conveyed an undivided one-half interest.

Apparently surprised by the contention that neither he nor his brother owned the 1½ acres, Deschamps contacted several county officials in July 1969, and they collectively examined the pertinent records available in offices of the auditor, assessor, and treasurer. Examination of those records indicated that a clerk in the Assessor's office had misinterpreted the 1961 Galendo to Fitzgerald deed, whose inartful form made it difficult to ascertain precisely what was conveyed and what was excepted. As a result of this misinterpretation, 26½ acres of the intended 28 acres con-

veyed by the 1961 deed were shown on the Assessor's (and subsequently on the Treasurer's) records as a transfer to Fitzgerald, but these officials' records continued to name Galendo as the "owner" of the 1½-acre disputed strip.

The then prosecuting attorney, acting in his official capacity, advised Deschamps that "he would take care of the problem." The prosecutor did write a letter to Neves on September 23, 1969, explaining the error and offering on behalf of the county commissioners to reimburse Neves the $255 it had paid for the property in 1967. Neves told the prosecutor that the offer "was not acceptable." Early in 1971 Deschamps was advised that he should seek private counsel. Nothing significant occurred thereafter until plaintiffs commenced this action in November 1973.

None of the parties ever actually assumed physical possession of the land. Deschamps went to the property once a year to get a Christmas tree. Neves surveyed a portion of the property, staked several corners, and "slashed out" the lines, but none of its agents assumed actual possession.

We consider, first, plaintiffs' contention that the tax deed should be set aside because (1) the owners of the land (plaintiffs) were not given notice of the proceedings through error of the county officials; and (2) plaintiffs made a good faith effort to pay their taxes which is equivalent to payment.

RCW 84.64 provides the statutory scheme for foreclosing tax liens on real property. Plaintiffs do not contend, nor did the trial court conclude, that there were any procedural defects in the tax foreclosure proceedings. Rather, plaintiffs' contentions, although set forth as two separate grounds, synthesize into the one assertion—that plaintiffs should be deemed legally excused from payment of the taxes upon the disputed 1½ acres and that the taxes should be deemed to have been paid, because the actions of the taxing officials prevented actual payment. The rule in such a situation has been definitively stated:

(1) When the question is to be decided upon the complaint and demurrer, the complaint must make a *clear*

case for relief; (2) when the case is tried on its merits, the evidence of a *bona fide* attempt to pay the tax must be clear, cogent, and convincing; and (3) any immediate and direct act of the treasurer which prevents the property owner from paying the tax may, likewise, be a ground for relief.

*Nalley v. Hanson,* 11 Wn.2d 76, 85, 118 P.2d 435 (1941).

In a more recent setting these judicially established criteria have been categorized as a so-called "third exception" to the conclusiveness of a tax deed. (RCW 84.64.180 lists the first two exceptions as "cases where the tax has been paid, or the real property was not liable to the tax.") This "third exception" has been said to apply "only in cases where the action of a public official has *frustrated* payment of the tax." (Italics ours.) *Label v. Cleasby,* 13 Wn. App. 789, 792, 537 P.2d 859 (1975). Under facts remarkably similar to the facts in the case at bench, a majority of the court held that a property owner has a right to rely upon the accuracy of the county's tax rolls and statements and, further, "Culpability for tax-statement errors do not attach to the taxpayer if he acts in good faith and without notice of the defect." *Bornstein Sea Foods, Inc. v. Whatcom County,* 55 Wn.2d 44, 46, 345 P.2d 601 (1959).

In the case at bench, defendants do not challenge the trial court's following finding:

> The plaintiffs made an effort to pay the taxes on the land in question during all years since they acquired the same, and up until they discovered the tax foreclosure sale in 1969 had honestly and sincerely believed that they had been paying the taxes on the land in question ever since they acquired it. Because of the facts set forth above the plaintiff's failure to pay taxes was due to mistakes.

It appears, therefore, that Neves' tax deed should be set aside if the action was timely commenced.

Both Neves and Kitsap County contend, however, that plaintiffs' action is barred by the statute of limitations, RCW 4.16.090, which requires actions to set aside a treasurer's deed to be commenced within 3 years from the date of

issuance. Plaintiffs counter with a contention that the defense afforded by the statute of limitations is overcome (1) by the doctrine of equitable estoppel, citing *Shafer v. State*, 83 Wn.2d 618, 521 P.2d 736 (1974), and (2) by the fact that the purchaser under the tax deed was never in possession of the realty, citing *Kupka v. Reid*, 50 Wn.2d 465, 312 P.2d 1056 (1957).

Plaintiffs' reliance upon equitable estoppel is based upon the then prosecutor's declaration in 1969, as an agent of the *county*, that he "would take care of the problem." For the moment, we pass consideration of that contention because there is no basis for asserting equitable estoppel against defendant Neves. None of its agents ever took any action inconsistent with its present claim—that the tax deed conveyed valid title to the disputed land. Accordingly, equitable estoppel provides no impediment to Neves' assertion that the statute of limitations bars plaintiffs' suit to set aside the tax deed.

Plaintiffs' reliance upon *Kupka v. Reid, supra*, presents a more difficult problem. That case reiterates the rule in this jurisdiction that a tax deed is favored and initiates a new title—"and that the original owner cannot attack it after the expiration of three years, even though the deed was executed under a void judgment." *Kupka v. Reid, supra* at 470. However, the holding of the case is that RCW 4.16.090 applies "only in those instances where possession had been taken by the purchaser under the tax deed." *Kupka v. Reid, supra* at 472-73. The rationale for the holding in *Kupka* becomes quite discernible when viewed in light of the court's reliance upon the relatively ancient case of *Buty v. Goldfinch*, 74 Wash. 532, 133 P. 1057 (1913).

In *Buty*, the court reviewed previous decisions in this and other jurisdictions and summarized them by stating:

> The logic of all these decisions is that the statute will not run in favor of the holder of a tax deed while the land in question is in the *actual* possession of the original owner. This, of course, is in harmony with the view that he who is in possession and *full enjoyment* of his property is not

required to protect his right to the property by instituting legal proceedings against another who merely claims such property but takes no steps to recover it.

(Italics ours.) *Buty v. Goldfinch, supra* at 540.

Thus, we deem the holding in *Kupka*—that actual possession by the purchaser under a tax deed is a prerequisite to invoking the bar of RCW 4.16.090—is limited to those cases in which "the original owner remained in possession." *Kupka v. Reid, supra* at 471. The defendants note that neither Fitzgerald nor Deschamps was ever in actual physical possession of the disputed strip of land.

Further, defendants direct our attention to interesting dicta in *Sallee v. Bugge Canning Co.*, 38 Wn.2d 737, 232 P.2d 81 (1951) in which the court, ignoring any requirement of the tax deed holder's possession, appeared to develop a rule for distinguishing between a tax deed executed under authority of a completely void judgment and one executed under a voidable judgment only. In the latter case, the statute of limitations would run; in the former it would not run. For reasons of its own the *Kupka* court chose to ignore the dicta in *Sallee* and, instead, developed its own reconciliation of prior, superficially inconsistent decisions. We believe the *Kupka* court deliberately, rather than inadvertently, chose to ignore the dicta in *Sallee*.

From our review of the prior precedents, we perceive the more comprehensive rule to be: In an action to set aside a tax deed executed pursuant to either a void or a voidable judgment, before the purchaser under the tax deed may effectively assert the bar of RCW 4.16.090, he must have exhibited, for the full statutory period of '3 years, a degree of dominion and control over the land sufficient to directly confront and challenge the degree of dominion and control previously enjoyed and exercised by the original owner. When the original owner remains in actual physical possession of the land it cannot be said that possession has been "taken" by the purchaser under the tax deed.

In the case at bench, Neves' possession was constructive

only, but Neves did lay out the boundaries of the land and did openly list the property for sale. This latter fact was made known to plaintiffs in 1969. Deschamps' degree of dominion and control was limited to visits to the area approximately once a year, and he did not commence this action until more than 3 years after he knew that an interloper with color of title was actively attempting to divest him and his brother of their ownership of the property. Under these circumstances, plaintiffs are barred from attacking the tax deed granted to Neves because the action to set it aside was commenced too late.

We turn next to plaintiffs' requests for alternative relief —(1) damages for negligence, or (2) compensation for an unconstitutional taking of property.

The complaint avers that plaintiffs lost an interest in real property by reason of "a negligent clerical error" and by Kitsap County's failure to furnish "tax statements or billings to the plaintiffs" on the disputed strip of land. We assume, but do not decide, that the clerk's error constituted actionable negligence and, additionally, that the cause of action did not accrue until plaintiffs' discovery of the error in 1969. *See Haslund v. Seattle*, 86 Wn.2d 607, 547 P.2d 1221 (1976). Thus, we confront the fact that plaintiffs did not commence this action until more than 4 years after Deschamps discovered the Assessor's error and the Treasurer's omissions.

Plaintiffs contend Kitsap County is equitably estopped from asserting either a 2 or a 3 year statute of limitations because of the prosecutor's action in July 1969, and thereafter.

The doctrine of equitable estoppel may be applied against a governmental entity acting in an irregular manner or through unauthorized procedural means within the scope of broad governmental powers conferred, granted, or delegated and when necessary to prevent a manifest injustice and the exercise of governmental powers will not thereby be impaired. *Shafer v. State*, 83 Wn.2d 618, 521 P.2d

736 (1974); *Finch v. Matthews*, 74 Wn.2d 161, 443 P.2d 833 (1968). However, equitable estoppel may not be applied against a governmental entity for an ultra vires act which is void because it is done without legal authorization or in direct violation of existing statutes. *Finch v. Matthews, supra.* Prior to enactment of RCW 84.64.145 in 1972, no county official had *any authority* to "take care of the problem," as the prosecutor suggested he would do in 1969.

Furthermore, absent fraud or misrepresentation, only those who have *reasonably* relied upon inconsistent acts or representations of the party against whom estoppel is asserted may raise the issue of estoppel. *Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 461 P.2d 538 (1969); *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 530 P.2d 298 (1975). Special knowledge or skill by the party asserting estoppel should be considered in determining the reasonableness of whether or not to apply the doctrine. *Burkey v. Baker*, 6 Wn. App. 243, 492 P.2d 563 (1971). Deschamps has been a licensed real estate salesman for more than 10 years, and his wife has been a licensed real estate broker for more than 15 years.

The trial court concluded that Kitsap County is not equitably estopped from asserting the defense of the statute of limitations. We agree. For a period of more than 4 years before plaintiffs commenced this action, they could not reasonably rely upon equitable estoppel to toll the running of the statute of limitations.

Finally, we assume—as did the trial court—that plaintiffs' proof amended the pleadings to permit their theory of inverse condemnation. This contention, also, must be rejected. We are hard pressed to find that the "taking" was for a public *use* as opposed to the general purpose of enforcing payment of justly imposed taxes.

Plaintiffs were not deprived of a beneficial use of their property by reason of a governmental entity's *usurpation* thereof; rather, plaintiffs were deprived of their property because they failed timely to utilize the processes of the

law which were available to them once they discovered that interlopers were attempting to divest them of title to the land.

Judgment affirmed.

PEARSON and REED, JJ., concur.